No. 13,522.

Miss Franieska Mahnke vs. New Orleans City and Lake Railroad Company.

## Syllabus.

1. There is no rule of law which obliges a person upon the highway to keep his eye, under all circumstances, constantly upon the road before him that he may avoid injury from any defect therein; he may, ordinarily,

presume that the road is in fit condition to travel; in other words, he is not obliged to presume negligence on the part of those whose duty it is to keep the highway in repair.

2. Railway companies, who as part consideration for the acquisition of the franchise of running cars through the streets of a city, have bound themselves by contract, to pave and keep in repair the streets between their rails, are held by stricter rules to the performance of their duty than are the municipal corporations themselves in the performance of their own obligations in this respect, to the general public.

APPEAL from the Civil District Court, Parish of Orleans— King, J.

*James C. Henriques* for Plaintiff, Appellee.

*Denegre, Blair & Denegre* for Defendant, Appellant.

The opinion of the court was delivered by NICHOLLS, C. J.

## STATEMENT OF THE CASE.

NICHOLLS, C. J. Plaintiff alleges that on the 22nd of September, 1898, she boarded one of the cars of the Rampart and Dauphine line of said defendant, at the corner of Desire and Rampart streets, in this city; that when said car had almost reached the corner of Dumaine and Rampart streets, she signalled to the conductor of said car to stop it; that it was stopped at the corner of Dumaine and Rampart streets; that she alighted from it, and proceeded immediately across the tracks of said company, at the rear of said car; that the night was dark, and as she crossed the track, she stepped into a hole, between the rails on defendant company's track, which hole was a short distance from the rail, and caused her to fall and break her ankle; that this accident happened while plaintiff was still on the property of defendant company, after being a passenger, for hire, in one of its cars, and said defendant company is liable for any damage she has suffered which was caused by its negligence; that it is the duty of said defendant company to keep the track between its rails in good repair, and that it was a negligence on its part in not complying with its duty in keeping this track in repair; that there was no negligence on her part, as she was forced to cross the track, in order to reach her destination and it was impossible for her to see said hole, by reason of the night being dark; that by reason of her stepping in said hole, which caused her to fall and break

her ankle, she has received permanent injury; that she is unable to walk without the aid of a crutch, and the physicians who have examined her injury all state that she is crippled for life; that she suffered great pain, and was forced to lie in bed for many months after receiving said injury; all of which has caused her great damage and loss.

That by reason of the physical suffering, pain and mental anguish occasioned by the injury received as aforesaid, and by the fact that she has been permanently crippled, and has lost the use of her limb, and is unable to walk without a crutch, she has suffered damages in the sum of five thousand dollars.

In view of the premises she prayed for judgment for five thousand dollars against the defendant company.

Defendant, after pleading the general issue, averred that if plaintiff suffered any injury, the same was due to her own fault which wholly caused or contributed to the injury.

The court rendered judgment in favor of the plaintiff for fifteen hundred dollars, and the defendant appealed.

## OPINION.

The plaintiff sues for damages received by her from stepping into a hole between the rails of the tracks of the defendant company on North Rampart street, and at the upper crossing of Rampart and Dumaine streets, which crossing it was alleged it was the duty of the defendant to have kept in a safe condition, under its contract with the city of New Orleans.

The defendant attempted to show that the hole was not at the point stated in plaintiff's petition, but in the centre of Dumaine street, on the line of the Orleans Railroad, which runs through that street. There was no evidence adduced to show that there was a hole in Dumaine street—and the position of that which caused the injury has been located beyond question as being on the upper crossing of North Rampart and Dumaine streets—at a point between the rails of the defendant company for whose safe condition it was responsible under its contract with the city of New Orleans. There was no reason for the plaintiff to have been on the line of the Orleans Railroad. She had been a passenger on one of the cars of the defendant company which was going up North Rampart to Canal street, on what is known as the "wood side" of the track of the defendant company's road. She had entered

the car at the corner of Dauphine and Desire streets with the intention of visiting an aunt who lived on Bourbon street, between St. Anne and Dumaine streets. She signalled the car to stop at Dumaine street and it was stopped—as is customary for the street cars to do—at the upper or further crossing of the cross street.

The plaintiff alighted from the car with her face to the woods and immediately turned towards the car and the river. The car started and the plaintiff crossed directly behind it towards the river side of North Rampart street. She would have been going out of her way to have crossed Dumaine street. It is unnecessary to refer particularly to the evidence as to the course taken by her after leaving the car, as the fact is, in our opinion, undisputable that she did not pass into Dumaine street at all.

Defendant contends that the plaintiff was in fault while making the crossing; first in turning towards and conversing with the conductor as she moved across, and second in not looking towards the ground as she crossed, to see what the condition of the crossing was.

We are satisfied that no such conversation took place; that the only thing said by the plaintiff to the conductor, with whom she was acquainted, was to bid him "Good night" while she was on the platform, or, at the furthest, while upon the steps of the car. The plaintiff, in her testimony, states that as she passed across the crossing, she kept her eyes up and in the direction of the second or river track of the defendant company's road upon which their cars passed, going down town towards Esplanade street, in order to make certain that she would not cross that track in front of an approaching car. She further says that although there was an electric light burning at the upper river side of North Rampart street, it was burning dimly at the time, and besides, there was an intervening post, which threw a shadow in her line of walk, and that the particular point at which she stepped into the hole was dark at the time.

We are referred, by plaintiff's counsel, to Thompson on Negligence, vol. 2, page 1197, where the author uses the following language: "There is no rule of law which obliges a person upon the highway to keep his eye constantly upon the road before him that he may avoid injury from any defect therein; he may presume that the road is in fit condition for travel; in other words, he is not obliged to presume negligence on the part of those whose duty it is to keep the highways in repair."

We are referred in further support of this same proposition to Hill

vs. Inhabitants of Seekong, 119 Mass. 85; Reed vs. Inhabitants of Northfield, 30 Mass. 94; George vs. The City of Haverhill, 110th Mass. 507; Weisenberg vs. The City of Appleton, 26 Wis. 56; Barstow vs. City of Berlin, 34 Wis. 357, and Gillespie vs. The City of Newburg, 54 N. Y. 468, also to Ober vs. The Crescent City Railroad Company, 44 Ann. 1059.

We have had occasion to deal with this question in Shidet vs. Dreyfus Company, 50 Ann. 280; Mahan vs. Everett, 50 Ann. 1162, and Tatje vs. Frawley, 52 Ann. 884.

The first mentioned case resembles the present one in most of its features; the injury having occurred, however, upon the sidewalk instead of the street crossing. Referring to the contention of the defendant in that case that the plaintiff had been guilty of contributory negligence, we said: "The plaintiff had the right to be walking precisely where she was. She was not bound to walk on the gutter's edge or in the middle of the sidewalk, but had the right to assume and presume that the whole way was clear." (Citing Heckman vs. Evenson, 73 N. W. 430.) In the case of Tatje vs. Frawley, we held that the plaintiff was guilty of negligence in not having, under the state of facts, disclosed therein, used precautions to avoid falling into the gutter which he should have known would likely be directly in his front.

It will be seen from these citations that there may be special circumstances in one case, calling for vigilance or care, which would not be called for in another. We do not think the plaintiff was guilty of contributory negligence. She had the right to assume that the crossing was safe, and it was not only her right, but her duty to look towards Canal street as she crossed, in order to satisfy herself as to what the situation might be, as to the approach on the river track of a car going towards Esplanade street.

One of the defendant's witnesses testified to the effect that he saw no hole in the crossing which would be sufficient, by being stepped into, to break a person's leg; this was simply the witness' opinion.

It may be that the crossing might have remained for weeks unrepaired without any one stepping into it, but the best answer as to the sufficiency of the hole to inflict injury if stepped into, is the fact itself that the plaintiff did break her leg above the ankle by stepping into it. It is testified to that this hole had been in existence and visible for a week, and furthermore that this crossing was liable to have such holes in it, caused by rats from the gutters working under the stones placed over it.

In view of this fact defendant was placed upon its guard as to the possible and probable bad condition of the crossing. We do not think the measure by which the city's obligation to be advised of and to repair defects in the sidewalks and streets is to be tested, is the exact measure by which to test the obligations in this respect, of street railway companies, who have acquired valuable franchises upon the streets for their private emolument, and who, as part consideration for obtaining such franchises, have bound themselves by contract to keep the crossings between the rails in repair. They are held by stricter rules to their duty in this respect than are the municipal corporations themselves in the performance of their own obligations to the general public. (Cline vs. Cline, 41 Ann. 1038.)

We are of the opinion that the judgment of the District Court, holding the defendant legally responsible for plaintiff's injury, is correct.

The evidence shows that plaintiff is a young lady, about nineteen years of age; that she lives with and keeps house for her father; neither his pecuniary condition nor his age are disclosed in the record. The plaintiff, as a matter of course, suffered greatly from the breaking of her leg; she was in the hospital for five months, and still goes there occasionally for treatment; she can walk, but with the assistance of a crutch or stick; Dr. Hincks, the physician who attended her when first hurt, testified that, in his opinion, she would not be able to stand fatigue or hard work on that leg; that the probability is that she would be a cripple for life; that the break was a very bad one. Dr. Fenner, who attended her at the hospital, testified that she had not, at the time of the trial, a very good ankle remaining after the injury; that, as to the probable effect of the injury upon her in regard to her ability to use her foot and limb, he could only approximately state that he thought she was going to suffer considerable disability for a good while, but he thought she might recover the use of that limb; it might take a number of months, but he thought she would ultimately, in all probability, get a useful limb: she might have some stiffness in the ankle, but he could not say how much; the limb will probably not be as good as it was before.

The plaintiff herself testified that the ankle was crooked and shortened.

Judgment was rendered by the court in favor of the plaintiff for

fifteen hundred dollars. Plaintiff prays that the judgment be increased to three thousand dollars.

We are of the opinion that the judgment appealed from is correct, and, for the reasons herein assigned, it is hereby affirmed.