Statement of the Case.
MONROE, J.
This is a suit against the owner and the tenant of the building situated on the southwest corner of Canal and St. Charles streets in this city, and against the city of New Orleans, for damages for personal injuries sustained by plaintiff by reason of his having fallen over an obstruction on the banquette in front of said building. It is alleged that the tenant, Davies, placed the obstruction where it was, or caused it to be placed there, and that it was done with the knowledge and sanction of the owner and of the city of New Orleans.
In appears from the evidence that on the morning of February 13, 1907, which was the day after Mardi Gras, plaintiff, who was then about 78 years of age, walked on Canal street from Chartres to Royal; that he there crossed Canal street to the corner of Canal and St. Charles streets (Royal and St. Charles being continuations of each other) with a view of going up St. Charles; that, on the banquette which at the corner forms at once the continuation of the Canal street and the St. Charles street banquettes, he stumbled over (what may be called, for lack of a shorter name) a skid, which extended along the Canal street banquette and projected two feet and some inches, or more, beyond the St. Charles street property line, and in the effort to recover his balance stumbled again over another skid running parallel with the first, and finally fell heavily, breaking off or knocking out two of his front teeth, bruising himself, particularly about the face, and shocking his nervous system to such an extent that he was rendered almost, if not quite, unconscious, and was thereafter confined to his bed for about a week, was under the care of a physician for about two weeks, and was not restored to his usual condition for several months. At the corner in question there is a building which has, along the Canal and St. Charles street sides and running around the corner, a broad gallery extending across the banquettes, which latter are about 12 feet wide. On January 30th preceding the accident Davies had obtained from the city authorities a permit, or license, good until February 16th, to erect seats on the gallery in question, subject to the approval of the city engineer, for the use of which, by persons wishing to see the various parades prior to and on Mardi Gras, he was (according to the license) to charge 50 cents each; but it was necessary for the support of the galleries, under such circumstances, that they should be propped up; the supports already provided not being considered sufficient. It is possible that a carpenter by the name of Heitcamp (who, after saying very positively that he did not know whether he did so or not on that particular occasion, went on to testify, with some particularity, as to how he did it) may have put up the props, but we doubt whether .he had any specific recollection of the matter.
The work was, however, inspected by Flanagan, who was sent from the city engineer’s office for that purpose, and from his, and some other, testimony, .including that of the plaintiff, we find that there were two rows-of scantling placed upright on the Canal street banquette about, say, four feet apart (the rows) and the same distance from the curb on one side, and the property line on the other, the upper ends supporting the gallery and the lower ends resting on the *185 strips of wood (2x4), which we have called skids, running the same way with the rows of scantling, i. e., with the line of the street, so that on the Canal street banquette there were three aisles which were unobstructed, whether underfoot or overhead, for the accommodation of the public. It appears, however, that the rows of scantling and skids were projected beyond the St. Charles street property line for a distance of about two feet and, perhaps, more, and hence, to that extent, ran across, instead of with, the pathway of the pedestrian, moving either up or down the banquette on that street, and it was over those skids that plaintiff, on his way up St. Charles street, stumbled and fell. Flanagan testified that it was safer to “toe” the uprights on the skids, but being asked by the court, “But were there not galleries supported time and again along there by the posts going on the pavement, without anything but the posts going straight up to the gallery?” to this he answered, '“Ves, sir,” and no one pretends that there was any necessity for so arranging the props or the skids upon which they rested, as that they should cross the line of travel, or that it was customary so to do. On the facts as thus stated, there was judgment for plaintiff and against Davies and the city of New Orleans, in solido, in the sum of $1,000, with interest from date of the judgment, the suit as to the owner of the property having been dismissed. The parties cast have appealed.
Opinion.
We find no error in the judgment complained of. Conceding that some latitude should be allowed in the matter of accommodating the public during the carnival season in New Orleans, it can hardly be called an accommodation to make the banquette on the main thoroughfare unsafe for the ordinary pedestrian, and when we consider that the crowds are frequently so dense that one cannot see where he is placing his feet, an obstruction two or three inches high, lying flat on the banquette immediately across one’s path, is more than likely to be the occasion of a fall. It is true that the crowd is shown not to have been so dense as that on the day that plaintiff met with the accident here complained of; in fact, he says that he supposes he could have seen the skids over which he stumbled if he had been looking down, but that he was not looking down; he was looking straight ahead of him; and the questionis whether in so doing he was guilty of such negligence as to preclude his recovery of damages for the injury sustained from those as to whose negligence there is no doubt. We do not think that he was. There is, according to our understanding of the testimony, a way of arranging props for galleries, when occasion requires, which is reasonably safe, as well for those who are to occupy the seats that are to be ■ rented on such galleries, as for those who walk beneath them, and we can see no reason why plaintiff, an old man who has lived here for more than BO years, should be held to have anticipated that a method would be adopted, which we take to have been unusual, and which, while safe enough for the people on the galleries, was unnecessary for their safety, or for any other reason, and was unsafe for those who might be attempting to make legitimate use of the banquettes. We say that the construction was unsafe, because the corner is probably at all times the most thronged corner in the city, and it is almost certain that, if a strip of wood is laid across the banquette there at any time, some one in the course of the day or night will fall over it, and the general appreciation of that extreme possibility is shown by the fact that on Canal street the strips, with their superimposed rows of uprights, were arranged with, and not across, the line of travel, which also shows that the arrangement last mentioned was unnecessary. Plaintiff, to paraphrase the language *187 of an eminent writer on the law of municipal corporations, was traveling on a public and crowded thoroughfare, “on a faith justified by the law,” and as his faith proved to be unfounded, those who were at fault must respond in damages. Dillon on Municipal 'Corporations (4th Ed.) § 1007, p. 1264. See, also, Shidet v. Dreyfuss Co., Limited, 50 La. Ann. 280, 23 South. 837; Mahnke v. N. O. C. & L. R. Co., 104 La. 411, 29 South. 52; Buechner v. New Orleans, 112 La. 599, 30 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; Lorenz v. City, 114 La. 802, 38 South. 566; Weber v. Union D. & C. Co., Limited, 118 La. 77, 42 South. 652; Rock v. Am. Construction Co., 120 La. 831, 45 South. 741, 14 L. R. A. (N. S.) 653; Gueble v. City of Lafayette, 121 La. 909, 46 South. 917; McCormack v. Robin, 126 La. 594, 52 South. 779; Evans v. Utica, 69 N. Y. 166, 25 Am. Rep. 165: Pettengill v. Yonkers, 116 N. Y. 558, 22 N. E. 1095, 15 Am. St. Rep. 442; Peverly v. Boston, 136 Mass. 366, 49 Am. Rep. 37.
Judgment affirmed: