O’NIELL, J.
The plaintiff has appealed from a judgment rejecting his demand for damages for personal injuries suffered in an automobile accident.
While the defendant was driving his automobile along Banks street, in New Orleans, at night, having the plaintiff and a Mr. B’ahs as his guests in the car, he ran into the Broad Street canal, overturning the car, and inflicting serious injury upon himself and his guests.
*275 The plaintiff alleges that the defendant was driving at a high rate of speed, without ordinary care or regard for safety, and that his running into the canal was the result of his gross negligence and recklessness.
The defendant denies that he was driving at a high or dangerous rate of speed, or was guilty of any negligence or carelessness. He avers that the accident was caused entirely by the dangerous situation of the open canal extending across Banks street, unprotected by guard rails, barriers, danger signals, or warnings of any kind; that, before going into Banks street on the night of the accident, never having traveled over that route before, he inquired about the condition of the street, in the presence and hearing of the plaintiff, and was told that the street was all right, paved all the way; that, when he approached the open canal, it had the appearance of a wet streak on the smooth paved street; and that he did not realize the danger until he was too close to the canal to stop his car or change its course to avoid the accident.
On the night of the occurrence the defendant, with Eahs as his guest in his automobile, drove by another route than Banks street to a park on Carrollton avenue, where they attended a prize fight, and met the plaintiff, who resided in the same apartments with the defendant. When the fight was over, the defendant invited the plaintiff to ride home with him. There were so many automobiles leaving the amphitheatre, going via Carroll-ton avenue and Canal street to the central part of the city, that the defendant thought of avoiding the congestion and confusion by taking Banks street, which was a convenient route for his return. When he and the plaintiff and Fahs were seated in the car, he asked a bystander what was the condition of Banks street, and was told that it was “all right, paved all the way.” It was then about 11 o’clock and the plaintiff’s automobile was among the last to leave the park.
Banks street is a prominent thoroughfare, having neutral grounds 21 feet wide through its center and a paved driveway 20 feet wide on either side. Broad street crosses Banks street at right angles. The canal where the accident occurred extends through or along the center of Broad street and across Banks street. On either side of the canal along Broad street is a paved driveway 30 feet wide, crossing Banks street and on the same grade or level with it. At the time of the accident the canal was open at the intersection or ends of the driveway along Banks street. The canal was about 25 or 30 feet wide at the top, the banks sloping to a depth of about 6 feet. There was little or no water in the canai. It was spanned by a bridge 36 feet wide, the center of which was in line with the center of the neutral grounds extending along Banks street. The floor of the bridge was level and even with the surface or grade of Broad street and Banks street, and was built on steel I-beams, with no superstructure except the railings on either side of the bridge. They were constructed of gas pipe, about 3 inches in diameter, there being two horizontal rails on 6 standards 4 feet high, the end posts being about 6 inches in diameter. The driveway in the center of the bridge was 22 feet wide, on either side of which was a footpath 6 feet wide and 6 inches higher than the surface of the driveway, the floor of the footpath extending 12 inches beyond the railings on each side of the bridge. The 6-inch curbing at the edge of the footpath on the bridge curved around the ends of the footpath and continued along the bank of the canal, separating it from the driveway on Broad street. The distance from the ends of the neutral ground on Banks street to the edge of the bridge on the canal was only 49 feet.
From the foregoing description of the in *277 terseetion of Broad street and Banks street it will be observed that a vehicle traveling to or from the central part of the city on the right driveway along Banks street, when it came to the intersection of Broad street, had to turn rather abruptly to the left, at the end of the neutral ground on Banks street, then turn immediately to the right, cross the 22-foot driveway on the bridge, turn again to the right to avoid the neutral ground on the other side of the bridge, then to the left into the right driveway along Banks street, and proceed on its original course.
The evidence shows, and it is not contradicted, that it was not safe — if in fact it was possible — for a vehicle to negotiate the compound curves necessary to cross the Broad street bridge at Banks street, except at a slow or moderate speed.
At the time of the accident there were no guard rails or barriers on the .banks of the canal opposite the ends of the driveway on Banks street, nor was there a red light or other warning of danger there. The only light near the bridge was an electric arc lamp hanging 14 feet above the ground, between the canal and the end of the driveway on which the defendant approached the canal that night. The electric lamp was on the right side of the driveway, only 5 or 6 feet from the line of the sidewalk on Banks street, and the curbing along the bank of the canal was 22 feet beyond the lamp, in the direction in which the defendant was traveling. There were small trees on the sidewalk on the right of the driveway between the lamp and a person approaching on Banks street as the defendant did that night. Of the other electric lights on Banks street the two nearest to the bridge were about 600 feet away, one on each side of the canal.
The testimony of expert and nonexpert witnesses on the effect of lights shows conclusively — and it is not disputed — that the location of the electric light at the intersection of the driveway on Banks and Broad streets contributed more than any other element to the danger of the situation. In fact, we need no expert testimony or other evidente to prove that the glare of an electric arc light has a blinding effect that makes it impossible to see an object beyond it, in or near the line of vision.
A series of photographs taken from the viewpoint of a person in an automobile at different points along the driveway on which the defendant approached the canal on the night of the accident corroborates the testimony of the witnesses on the following facts: At a distance of 520 feet from the canal the trees on the sidewalk did away with the glare of the electric light near the canal, but the banks of the canal could not be seen at that distance. At a distance of 320 feet from the canal a small tree on the sidewalk yet prevented the glare of the electric light near the canal, but nothing could be seen of the canal at that distance, except the 6-inch concrete curbing, which was hardly noticeable. At a distance of 110 feet from the canal the glare of the electric light rendered it impossible to recognize the canal, which had the appearance of a shadow or wet place on the paved street beyond the light. That condition prevailed up to a distance of 25 or 30 feet from the edge of the canal, or until the traveler came under or nearly under the lamp. The expert and nonexpert testimony shows — and it is not contradicted — that the dirt banks of the canal did not reflect, but absorbed, the light, so that to a traveler approaching the canal and coming under the electric lamp it had the appearance of a shadow or wet streak across the paved driveway until he came too close to stop his vehicle or turn aside to avoid an accident.
The description we have given of the situation refers to the time of the accident. | Thereafter, on account of that accident and *279 four or five other automobile accidents that occurred there, the municipal authorities placed barriers at the edge of the canal and red lights on the bridge, and they have since covered the canal at the intersection of Banks street.
The plaintiff’s automobile was a one-seat runabout. The top was folded back and the wind shield was lowered, out of commission. The weather being very warm, the defendant had removed his hat. He had the full benefit of whatever light was favorable to his view and had all of the blinding effect of that which glared in his face. He had no knowledge or warning of the dangerous situation of the Broad Street canal; nor had his guest Fahs, as far as the record shows.
The plaintiff, testifying in his own behalf, admitted that he had traveled over that route several times before, in other automobiles, and had a general knowledge of the situation of the bridge over the Broad Street canal, but said he had had no experience or knowledge of the operation of an automobile. He did not know the difference between a speedometer and a carburetor, as he expressed it. He said he was no judge of the speed of an automobile, couldn’t tell whether a ear was going 20 miles or 60 miles an hour; but he afterward said that he could judge the speed between 10 miles and 20 miles an .hour. When asked why he blamed the defendant for the accident, he replied that the latter was driving at a rapid rate of speed. He said that his only reason for thinking the speed was excessive was that the defendant’s car passed several others, but none passed-his, on the road from the park to the place of the accident. He did not deny, but, on the contrary, in effect admitted, that he did not at any time before the accident consider the speed at which the plaintiff was driving dangerous or excessive. He said he had ridden with the -plaintiff several times before,' had never had cause to complain of his manner of driving, regarded him as a safe and careful driver, and trusted entirely in his skill and judgment on the night of the accident. He admitted that it did not occur to him at any time during the drive that resulted in the accident that there was any danger in the speed or manner of the defendant’s driving, or that .the defendant was doing anything that he should not do. He did not inform the defendant of the location of the bridge or the open canal, and, in effect, he admitted that he did not think of those conditions before the accident. His explanation as to why he did not warn the defendant of the danger is given in the following excerpt from his testimony on cross-examination, viz.:
“Q. Did you see anything of this canal before you struck it? A. I saw it. That’s all I can remember about it. Q. You saw the canal before you struck it? A. I presume I saw it. Q. You didn’t tell Mr. Moso Jacobs that you saw anything ahead? A. I never dictate to a driver what I see. I didn’t want to disturb Mr. Mose Jacobs or any other driver.”
The plaintiff denied having heard the defendant inquire about the condition of Banks street before leaving the park. But the defendant and Fahs testified that the conversation took place while the three men were seated together in the automobile.
The plaintiff was rendered unconscious by the accident and did not regain consciousness until 7:30 the next morning. He testified that a few days after the accident, while he and the defendant were at the infirmary, he was taken on an invalid chair to the defendant’s room or ward, and in their conversation the defendant said he did not know how the accident had happened, but that he saw so many machines ahead of him at the time that he must have got puzzled and lost his wits.
The defendant testified that he did not remember making that admission, and denied that he had got puzzled or rattled when he approached the canal. He said he had trav *281 eled at a speed varying from 14 to 18 miles an hour on his return from the park; that he passed one or two or perhaps three automobiles on the road; and that one passed him a short time before he went into the canal. He testified that the accident was due entirely to the fact that he did not know of the dangerous situation, of the bridge being out of the line of the driveway, or of the open canal across the driveway; that the electric light in front of him gave the canal the appearance of a wet place, as if the street had been sprinkled there, and he did not realize the danger until he was within 10 feet from the bank of the canal, when it was too late to avoid the accident.
Mr. Fahs testified that the car was traveling at a rate of about 15 miles an hour at the time of the accident, and that he did not see the canal until the instant when the car plunged into it.
A professional chauffeur, as a witness for the plaintiff, testified that the defendant’s automobile passed his a short time before the accident, traveling at such a high rate of speed that the witness said to himself, “That fellow will do some humbug.” He said he thought -the speed was then about 30 or 35 miles an hour, but that he did not know at what speed the car was traveling when it ran into the canal; that he was then four or five blocks from the canal. From which we assume either that the witness’ car was going very slow or that he was very far from the scene of the accident when the defendant’s car passed his. He said the dust of the street prevented his seeing the defendant’s car after it passed, but that he heard the blow-out or explosion of the tires and the smashing of the wind shield when the car went into the canal. As a matter of fact, the tires did not burst, nor was the wind shield broken. Strange to say, the car was not very badly damaged; it was pulled into town on its own wheels that night.
Two other witnesses who had returned from the prize fight together in an automobile testified that the defendant’s car passed their car before the accident. One of them testified that the defendant’s car was going at a speed of 25 or 30 miles an hour when it passed. He said, and insisted, that he was 800 or 1,000 feet from the canal when the defendant’s car passed, and that he was about 300 feet from the canal when the accident occurred. His traveling companion, however, said, and insisted, that he was only about 100 feet from the canal when the defendant’s car passed, and that he, the witness, was only 40 or 50 feet from the canal when the accident happened. He said he did not know how fast the defendant’s car was going when it passed, but that his (the witness’) car was traveling at about 20 miles an hour. , The conflict in the testimony of the two witnesses last referred to as to the place at which they were when the defendants car passed them, and as to where they were when ’the accident occurred, 'detracts somewhat from the reliability of their estimates of the speed.
We are informed by the testimony in this case that, according to a well-recognized rule of ethics, an -automobile driver always speeds up his car after he has signaled his desire to pass a car in front of him and the latter has steered to the right of the road; the object being to avoid dusting the occupants of the other car unnecessarily, and to avoid keeping it crowded to the side of the road any longer than is necessary. Hence the witnesses who testified to the speed at which the defendant’s car passed the other two ears on the road saw it perhaps speeding faster than it traveled a.t other times that night.
Another professional Chauffeur, as a witness for the defendant, testified that he passed the defendant’s car coming from the prize fight at a point about seven blocks from the *283 scene of the accident, and that the defendant’s speed was then only about 12 or 15 miles an hour.
We have given a synopsis of all of the testimony on the subject of the speed at which the defendant was driving before and at the time of the accident. The preponderance of the evidence is, in our opinion, not that the speed was excessive, but to the contrary, that it was moderate. The testimony of the plaintiff on that subject is rather favorable to the defendant, and that of the latter is entitled to as much consideration as is that of any other disinterested witness, because the record discloses that, on account of his indemnity insurance, the defendant has little or no financial interest in the defense of this suit. The fact that the car went into the canal is not a case where res ipsa loquitur with regard to the speed at which the car was going, because the evidence shows conclusively that the defendant could not have avoided running into the canal, although he was going at a moderate speed when he discovered the danger.
Our conclusion from the evidence is that the defendant was not at fault for failing to see the canal sooner than he did.
The question of law to be decided is whether the defendant was guilty of negligence in his failure to maintain such a slow speed that he might have avoided the accident when he saw the danger. If the defendant was guilty of negligence in that respect, was the plaintiff’s acquiescence in the speed at which the car was going such contributory negligence on his part as to prevent his recovering damages for the injury he suffered?
[1] We agree with the learned counsel for the plaintiff that one who invites another to ride with him as his guest in an automobile is not absolved from responsibility for negligence or imprudence merely because he is performing a gratuitous service or favor to his guest.
[2] Although an invited guest of the driver in an automobile, being a mere licensee, is not entitled to the consideration due by a carrier to a passenger for hire, he is nevertheless entitled to the benefit of the provision of our Civil Code that any act of negligence or imprudence that causes injury or loss to another obliges him who was at fault to pay for the injury or loss. R. C. C. 2315, 2316. That provision of the Code, however, is controlled by the word “fault.” If there was no fault in the defendant’s driving at the speed he maintained—if that speed was not in itself a matter of negligence or imprudence, under the circumstances and conditions prevailing—he is not responsible for the unfortunate result.
[3] We are referred to the decision of the Supreme Court of Wisconsin in the case of Lauson v. Town of Fond du Lac, reported in 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30, to support the general proposition that it is the duty of the driver of an automobile to maintain a speed sufficiently slow, and maintain such control of his car, that he can stop within the distance in which he can plainly see an object or obstruction ahead of him. That rule is subject to certain modifications. It cannot apply to a case where an object or obstruction which the driver of an automobile has no reason to expect appears suddenly immediately in front of his automobile.' In the case cited the plaintiff was denied the right to recover damages from the municipality for injuries sustained by his running into an excavation in the highway, because he was guilty of contributory negligence. He was driving over a strange road on a dark, rainy night. He had only one lamp on his automobile, and it was tilted downward so as to throw the light into the wheel tracks in the *285 road. He could not see an object more than 10 or 12 feet ahead of him, and his speed was such that he could not stop his machine within a distance less than 15 or 20 feet. It was held that, although the speed at which the plaintiff was traveling when the accident occurred would have been a safe and moderate speed under other circumstances, it was a dangerous speed under the conditions prevailing. The sound principle of law invoked and applied in that case has no application to the facts of the case before us.
[4] The rule is well established in the jurisprudence of this state that a person using a public highway, especially in an incorporated city, has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his. attention has not been called. Nessen v. City of New Orleans, 134 La. 455, 64 South. 286, 51 L. R. A. (N. S.) 324; Stern v. Davies, 128 La. 182, 54 South. 712; McCormack v. Robin, 126 La. 594, 52 South. 779, 139 Am. St. Rep. 549; Rock v. American Construction Co., 120 La. 831, 45 South. 741, 14 L. R. A. (N. S.) 653; Weber v. Union Development & Construction Co., 118 La. 77, 42 South. 652, 12 Ann. Cas. 1012; Mahnke v. N. O. C. & L. R. Co., 104 La. 412, 29 South. 52, quoting 2 Thompson on Negligence, 1197, and many decisions; Shidet v. Dreyfuss Co., 50 La. Ann. 284, 23 South. 837.
As far as the defendant knew, or ordinary caution required him to know, the road ahead of him was safe. The plaintiff knew, but perhaps forgot, that there was danger ahead. His failure to remember that the bridge was out of line with the driveway and that there was an open canal ahead, and his failure to warn the defendant when he saw that the latter did not know of the danger, was the only neglect on the part of any occupant of the car that, caused or contributed to the accident.
[5] We do not hold that, if the defendant’s ignorance of the condition of the road ahead of him was in itself negligence, that negligence would be imputable to the plaintiff, who was only a guest in the car; nor do we hold that the plaintiff, by accepting the defendant’s invitation to ride in the car, thereby engaged in a common enterprise or joint venture with him in which neither would be liable to the other for an act of negligence.
[6, 7] What we maintain in this case is that a man who, possessed of all his faculties and knowing that there is always some danger in traveling in an automobile, accepts an invitation to ride as the guqst of the driver, assumes the risk of the ordinary dangers of which he is aware, and cannot hold the driver of the car responsible in damages for an accident, if there was no fault or negligence or imprudence on the driver’s part. The driver’s duty and responsibility is merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger of the occupation. With regard to the care due by the driver of an automobile for the safety of a passenger riding as his guest, we do not recognize the distinction referred to in some jurisdictions between gross or willful negligence and the ordinary negligence or imprudence referred to in the provisions of our Civil Code, arts. 2315 and 2316. We agree with the doctrine recognized by the Court of Appeals of Kentucky in Beard v. Klusmeier, 158 Ky. 153, 164 S. W. 319, 50 L. R. A. (N. S.) 1100, Ann. Cas. 1915D, 342, and approved by the Court of Appeals of Maryland in Fitzjarrell v. Boyd, 123 Md. 497, 91 Atl. 547, that a guest in an automobile is entitled to demand that his host shall exercise ordinary care for safety in driving the car, and that the latter’s liability is not *287 confined to acts of gross negligence or willful recklessness.
[8] Our review of the decisions cited by the learned counsel for the plaintiff discloses that in every case referred to in which the driver of a vehicle was held liable in damages for an accident resulting in injury to his guest in the vehicle the accident was the result of negligence on the part of the driver, and the guest was not guilty of contributory negligence. For example, in Pigeon v. Lane (decided by the Supreme Court of Errors of Connecticut) 80 Conn. 237, 67 Atl. 886, 11 Ann. Cas. 371, the defendant undertook to convey in a sleigh a boy 14 years of age, an employe of the defendant, to the place where he was to work for the defendant. The driver who was put in charge of the sleigh by the defendant was guilty of negligence in overloading the sleigh and recklessly and negligently running into a bridge and injuring the boy. In Beard v. Klusmeier, supra, the defendant had invited the plaintiff and another woman and two men to ride with him in his automobile at night. He droye the car at a high rate of speed, and, when another automobile driver attempted to pass him, he raced with the other car at a very dangerous speed. The plaintiff protested and begged him to stop and permit her to get out of the car, but he refused. He ran into a pile of building material stacked in the street, wrecking the car and seriously injuring the plaintiff. In Mayberry v. Sivey, 18 Kan. 291, the defendant invited the plaintiff to ride with him in his buggy. The defendant, who was driving the horse, challenged another driver for a race, and whipped up his horse to pass the other. The plaintiff, in great fear, begged the defendant to stop and let him get out, but the defendant continued the race at a reckless speed until he ran into a stone fence, overturning the buggy and injuring the plaintiff. In Lochhead v. Jensen, 42 Utah, 99, 129 Pac. 347, the act of negligence complained of was the defendant’s running his automobile at a high and dangerous rate of speed, resulting in an accident in which Lochhead, who was riding with the defendant as his invited guest, was killed. The trial judge charged the jury that, if the defendant did not use due diligence in driving the car, he was liable in damages for the resulting accident, and that the jury was to consider the maimer of the defendant’s driving the car and determine whether he had exercised reasonable care. On appeal the charge was condemned, not because the appellate court did not approve the doctrine requiring the defendant to exercise ordinary care, but because the charge presented a question of negligence far beyond that charged in the complaint, and permitted the jury to base a verdifct upon a mere failure to keep a reasonable lookout for obstructions or dangers in the road. We do not understand that the appellate court would have condemned the charge if the complaint on which the suit was founded had charged a lack of ordinary care. In Patnode v. Foote (Appellate Division of the Supreme Court of New York) 153 App. Div. 494, 138 N. Y. Supp. 221, the plaintiff, who was traveling ¿s a guest in the defendant’s buggy, protested against the reckless speed at which the defendant drove the horse; but the defendant continued the reckless driving until he collided with a wagon, throwing the plaintiff to the ground and injuring him. The only contention of the defendant in that case appears to have been that he owed no duty or care for the plaintiff’s safety, because he was rendering him a gratuitous service at the time of the accident. The verdict awarding damages to the plaintiff was affirmed on appeal, on the doctrine of Pigeon v. Lane, supra. In Fitzjarrell v. Boyd, supra, the complaint was that the defendant drove his automobile with recklessness, negligence, and want of care, as a result of which it skidded and struck a *289 telegraph pole, overturned, and inflicted personal injuries upon the plaintiff, who was the defendant’s invited guest in the caí. The plaintiff’s declaration contained the allegation that he had at the time protested against the defendant’s reckless driving; and we assume that that allegation was borne out by the evidence, from the fact that the court found that the facts of the case were very similar to those in the case of Beard v. Klusmeier. In Routledge v. Rambler Automobile Co. (Court of Civil Appeals of Texas) 95 S. W. 749, the plaintiff was the invited guest of a party of men and women who had hired an automobile from the defendant company for a joy ride. The chauffeur was the defendant’s employe. In his testimony he virtually admitted that he was entirely at fault for tlie accident that resulted in injury to the plaintiff. He admitted that he was traveling at such a high rate of speed that he knew he could not negotiate a turn in the road which he knew was ahead; that he did not slow up for the curve because at the time he did not know where he was. The car dashed into a wire fence. The passengers who had hired the car and had invited the plaintiff to ride with them were unacquainted with the road and did not know of the turn or curve ahead of them. They had urged the chauffeur to increase his speed and “burn the air.” The plaintiff sat on the front seat with the chauffeur, but did not urge or. request the chauffeur to drive fast, nor did he protest against the fast driving. The court found, however, that the plaintiff had not acquiesced in the orders given to the chauffeur by those who had hired the automobile and whose guest the plaintiff was. On appeal the Texas court said that, if it had appeared that the plaintiff had urged the driver of the automobile to go at a high rate of speed, or if he had acquiesced in the demand of his comrades for a high rate of speed, and if the chauffeur had thereby been induced to go at an unsafe rate of speed, and the accident occurred by reason of such high rate of speed, then the plaintiff’s negligence would have contributed to the result, and he could not recover. In that case the plaintiff was not aware of the dangerous condition of the road ahead, but the chauffeur, for whose negligence the defendant was responsible, did know of the danger. In the present case the plaintiff knew of the dangerous condition of the road ahead, but the defendant was unaware of it.
Our conclusion is that the defendant was not guilty of any negligence, and that he is not liable in damages for the injuries which the plaintiff suffered from the accident.
The judgment appealed fro,m is affirmed at the cost of the appellant.
SOMMERVILLE, J., concurs.