GREGORIO MELÉNDEZ, represented by his father with *patria potestas*, DOMINGO MELÉNDEZ, Plaintiff and Appellee, *v.* ABELARDO ALVAREZ, Defendant and Appellant.

No. 3728.   Argued January 21, 1926.—Decided April 27, 1926.

*Salvador Suau* and *Fernando B. Fornaris* for the appellant.   *Mariano Acosta Velarde* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Abelardo Alvarez was driving his Essex automobile on the road from Bayamón to San Juan and a little beyond the place where the road is crossed by the track of the American Railroad Co. he struck a boy of nine years of age and, among other injuries, broke the femur of his right leg near the knee.   In the complaint claiming $10,000 as damages it is alleged that the injury caused to the plaintiff was due solely and exclusively to the negligence of the defendant.   The specific acts in which the proximate cause of the accident consisted are not described.   In the development of the evidence the plaintiff attempted to show that the proximate cause was due to the excessive rate of speed at which the defendant's car was running and to his failure to give

warning when the vehicle was approaching the place where the boy was alleged to have been standing holding his little sister by the hand. Therefore, the theory of the plaintiff is that when struck by the defendant's car the boy was standing at the right-hand side of the road leading to San Juan near the post that holds one of the chains used as barriers at the grade crossing of the railroad track.

In defense the defendant contended that he was running at moderate speed and slowed down when he approached the railroad track where he met and passed two automobiles, one behind the other, and that after he had crossed the railroad track and was about to pass the second automobile the boy ran out suddenly, with the child in his arms, behind the last automobile met by the defendant and came in front of the defendant's car where he was struck by its bumper in spite of his having done all that was humanly possible to avoid the accident.

The lower court gave judgment for the plaintiff in the sum of $4,000 and stated its conclusions in support of the judgment as follows:

"On the evidence as a whole the court finds that the accident could have been avoided if the defendant had taken adequate precautions when he saw the children. If the boy ran out from the left side of the road (in relation to the defendant) after the latter had passed the last automobile running in the opposite direction, it is obvious that the defendant had the road clear for turning to the left quickly and prevent striking the boy near the right-hand ditch. On the other hand, the defendant failed to give warning when he approached the said vehicles and if he had done it by sounding his klaxon or horn, the boy probably would have directed his attention, before deciding to cross the road, to the side of the road where the defendant's car was running. It was the duty of the defendant not only to give warning, but also to reduce the speed, as it has been proved that the road from Bayamón to San Juan is crossed at that place by the track of the American Railroad Co. and is intersected by the road leading to Cataño. Those precautions would have avoided the accident. The defendant could see clearly all that was in front of him for a distance of from 300 to 400 meters before reaching the place of the accident,

inasmuch as the road is straight there; and if he had paid the necessary attention before passing the other automobiles he would have noticed the presence of the two children on the left side of the road.''

The supposition of the trial judge that, according to the appellant's theory, the latter could have avoided striking the boy simply by turning to the left, is a mistaken hypothesis of the duty that the law and the jurisprudence may imagine in such cases. We might say the same in regard to the duties that seem to be imposed upon the defendant that if he had taken adequate precautions upon seeing the children the accident would have been avoided.

As the assumed situation is a case of emergency, the rule judicially stated is that a person acting under such circumstances ''is not held responsible for failure to exercise the better judgment which might result from deliberation, since that rule is applicable as between the person who acts and the person by whose fault he is compelled to act without time for deliberation.'' 20 R.C.L. 30. *De Jesús* v. *Ayende,* 32 P.R.R. 412.

''Common experience tells us that instances often occur in which appalling circumstances of imminent danger or peril so suddenly and unexpectedly confront persons of ordinarily cool and calm temperament and judgment that they for the time lose their presence of mind, or so find themselves in a position in which they are required to make up their minds as to the best or safest course to adopt to avoid the disaster which such circumstances threaten commensurately with the suddenness with which they arise. . . . and the courts have uniformly held that in such cases, in which damage or injury has directly resulted from the exercise of an erroneous judgment in attempting to meet or overcome the peril of such circumstances, the party whose act has thus caused the injury will not be held actionably responsible or liable for any injury or damage so caused.'' *Lawrence* v. *Goodwill,* 186 Pac. 781, 44 Cal. App. 440.

Another precaution or duty of which the lower court speaks refers to the fact that the defendant failed to give warning by sounding his klaxon or horn upon meeting the two vehicles coming from the opposite direction. The ap-

pellee alleges that that duty is prescribed in subdivision (e) of section 12 of Act No. 75 to regulate the operation of motor vehicles, etc., approved April 13, 1916, as follows:

"(e) On overtaking another vehicle or person, warning shall always be given and the person or slower-running vehicle shall draw to the right as far as practicable, and the overtaking vehicle shall always pass to the left."

It seems clear that the statute refers to vehicles and persons going in the same direction. Logically, the driver of the car in front does not see the one coming behind and if the latter wants to pass the one in front the law requires him to give warning in order to prevent the possibility of an accident, this being the only object of the statute.

When the vehicles are running in opposite directions they are seen and it is unnecessary to take the precaution of giving warning when passing each other.

Likewise, as the opinion of the court does not indicate that the defendant was running at a rate of speed in excess of that permitted by the statute, we do not see that the railroad crossing with a system of bars to close it imposed on the defendant so strongly the duty to slow down, as sustained by the appellee, for he was excused from the usual obligation "to look and listen" by "the implied invitation extended to him by the fact that the bars were not down." *Morales* v. *Central Vannina*, 32 P.R.R. 188, 195.

The lower court says finally that the defendant could have noticed, by paying due attention before passing the two automobiles that came in the opposite direction, the presence of the children who must have been very near the left side of the road opposite the place where the accident occurred.

This is another supposition of the court which, admitted as true for the purposes of this opinion, does not involve such carelessness or negligence on the defendant's part as to make him liable for the consequences of the accident. A rational and logical presumption contrary to that

indulged by the trial judge is established by the jurisprudence in holding that the driver of a motor vehicle has the right to presume that a person standing in a place of safety will not suddenly leave that position and place himself in front of the vehicle. On the contrary, he has the right to assume that he will not so act. 3 Cal. Jur. 872.

On the other hand, an analysis of the evidence leads us to the conclusion that the case is one of an unfortunate accident that occurred according to the explanation or theory of the appellant. The boy ran across the road unexpectedly at the time when the defendant was passing the second of the automobiles coming from the opposite direction. The boy showed that he was intelligent, for he seemed to appreciate the importance of his testimony. It was different whether the accident occurred while he was standing on the side of the road or while he was running across the road. Yet while he insisted that he was struck by the defendant's car on the right side of the road, at last he could not withhold the truth from his tender conscience, as shown by the following from the cross-examination:

"Q. How, then it caught you?—A. I crossed quickly, but it did not catch me in the middle of the road; it caught me there on the side.—Q. Did you cross quickly?—A. Yes, sir.—Q. It caught you when you were crossing quickly, on the other side of the road?—A. Yes, sir."

Luis A. Deliz, an engineer of the American Railroad Company, testified that the company has a grade crossing with a system of bars near the place where the accident occurred. He described the topography of the land and said that coming from Bayamón and before reaching the grade crossing there are some 300 or 400 meters of straight road

Domingo Meléndez, the father of the boy, works for the railroad company and did not see when the car struck the boy. He was some ten or twelve meters away roping a cow. He learned of the accident by the screams of the boy.

Emilio Jiménez was coming in his automobile from Bayamón to San Juan. He did not witness the accident, and said: "What I saw was that in coming from Bayamón toward San Juan, on the right-hand side of the road, after passing the railroad track and behind the hut of the barrier-guard I saw a crowd and one or two automobiles stopped there." This witness said nothing about having seen the defendant's car overtaking and passing his a little before the accident. Lino Burgos, his chauffeur, although saying that when they were some 300 or 400 meters from the grade crossing and running at a speed of from 22 to 25 miles an hour, the defendant's automobile overtook and passed them, the record shows the following:

"Q. Did you see the automobile strike the boy?—A. No, sir; I saw when the car stopped and a man unknown to me jumped out and lifted the boy from the road.—Q. Did you see the boy before he was struck?—A. No, sir."

It seems that the appellee's main purpose in presenting this witness was to prove the speed at which the defendant's car was running, that is, to prove that the defendant was running at an excessive rate of speed. However, it does not appear that the defendant maintained the same rate of speed, inasmuch as another witness, Emilio Ríos, who was 10 or 12 meters from the place of the accident, said that the defendant came neither at high nor low speed and that the car was slowed down before crossing the railroad track, and in regard to the accident itself he could not determine "whether the children crossed the road or from where they came."

María Meléndez, a cousin of the plaintiff, although saying that she witnessed the accident, admitted that a few moments before the occurrence two automobiles had passed in a direction opposite to that of the defendant and denied that the latter made statements incriminating himself. In this she contradicted the testimony of Domingo Maldonado (sic), the father of the boy, who, on the contrary, appears to have made

statements to Julián Castrillo, Justice of the Peace of Guaynabo, to the effect that it was an accident where the chauffeur was guilty of no negligence because he ordered the children to cross the road without noticing that another car was coming.

This was the evidence of the plaintiff and it shows that the trial judge could not disregard the appellant's theory, which was fully confirmed by his evidence. Apparently the mind of the judge was fixed on the idea that if the defendant had swerved to the left the accident would not have occurred. The attitude of the judge may also be noticed from his questions to the appellant's witnesses, especially during the testimony of Fernando Jiménez, who was in the appellant's car, and which in part is as follows:

"Q. Was it behind the last car that you saw the children?—A. Yes, sir.—Q. What time had passed, if you can estimate it, from the moment when you saw the children to the moment they were struck by the automobile?—A. It was all in an instant, without means to prevent the accident. (Plaintiff): Those are conclusions of his; we do not know that he is a chauffeur.—Q. At the speed at which Alvarez was running, could he have avoided the accident if he had seen the children?—A. They also came running and the speeds were opposed.—(Judge): Q. Were the speeds opposed or forming an angle? —A. Yes, sir; but I mean that since one was coming forward the other that was going had to collide sooner.—Q. He could have turned to the left.—A. He would then collide with the other cars.—Q. Had they passed already?—A. No, sir, it was a sudden, quick happening. —Q. You say that you saw the children when they were at a distance of two meters?—A. No, sir, I have not said that.—Q. The first time that you saw the children crossing the road, where did you see them? —A. I did not see them.—Q. Why do you say that they were running?—A. When they crossed in front of the car.—Q. Did you not see them when they came out from behind the last car?—A. When they crossed, behind the last car.—Q. The first time that you saw them, where did you see them?—A. When they came out from behind the last car.—Q. In relation to your car, where did you see them, in front of the left mudguard, of the bumper, or in front of the radiator, or where?—A. I saw them a little to the right.—Q. The first time you saw them to your right?—A. Yes, sir.—Q. How far from the car, a

little to the right, did you see them?—A. Nearly close to the car, approximately one meter; very near.—Q. Was it a small Essex car?—A. A five passenger car.—Q. Do you know if he turned to the left?—A. I did not pay attention to that.—Q. If Alvarez had turned to the left would he have avoided the accident?—A. No, sir, he caught them immediately when they came out.—Q. The last car had passed, and immediately behind it, at a distance of about a meter or two, a boy came out and he sees him in front of the car and to the right; the two automobiles had passed already, what prevented him from turning to the left and thus avoiding collision?—A. The two cars that were there.—Q. They had passed already forming a straight angle.—A. Then he would have caught him more to the front.—(Defendant): Your Honor does not understand. . . . (Judge): I understand it, but I believe that if he had turned to the left he would not have caught them. (Defendant): He would have caught them sooner. . . Q. Before the cars that came from San Juan and passed yours, and before reaching the grade crossing, had you not seen the group formed by the father with the children?—A. No, sir.—Q. From where did they come, from the earth?—A. There were two cars coming.—Q. Were not those children on the left side waiting for those two cars to pass.?—A. I did not pay attention to that.—Q. Here the testimony shows that the accident occurred where the road was straight in an extent of from 300 to 400 meters. Two cars came on the way from San Juan; they were met by you at the grade crossing where the railroad barrierman and his house were. Now I ask: Did you see those cars coming at a great distance?—A. Yes, sir.—Q. Was not the barrierman's house between those two cars and yours and the children waiting for the cars to pass?—A. They might have been at the left side of the road.—Q. Did you see them?—A. No, sir.—Q. Was there anything obstructing the view of the house and its surroundings?—A. Yes, sir; we saw the house, and the two cars coming. If we had seen the children I would have been the first one to call the chauffeur's attention. The idea was to run with caution."

All of the circumstances lead us to hold that the trial judge was never under the impression to believe that the accident occurred when the children had already crossed the road and were standing near the post that holds the barriers until the appellee struck them with his car. The record does not explain why, without the boy's attempting to cross the road, the defendant had to turn his automobile toward the

324

boy who was near the post which is at a distance of one meter from the surface of the road. This could have been explained by a defect in the steering gear, by the skidding of the automobile, or by a mischievous or criminal intention of the defendant. But there is no basis for such things. The facts occurred under a situation of absolute emergency when the boy ran across the road and put himself, unexpectedly to the defendant, in front of the car when the defendant was passing the second car that came in an opposite direction. It was a dangerous situation that arose suddenly in front of his car and there were no reasons for the defendant to suspect that he was to be confronted by such a situation. When the defendant was passing the two automobiles that came in an opposite direction these necessarily prevented him from discovering what might be on the left side of the road where the children appeared for the first time, and even assuming that he saw them before reaching the grade crossing at a distance of 300 or 400 meters, as alleged, he had the right to believe that they were not going to abandon their safe place and cross the road under circumstances that they could not be seen. To sustain liability under such circumstances we should have to arrive at clearly absurd or impossible conclusions. If for every individual who may be accidentally or necessarily on the sides of the public highways the speed of every automobile that is being run at a lawful rate of speed had to be reduced when passing every person, it would amount to a practical suppression of the purpose for which a means of locomotion that because of its rapidity has become an actual social necessity.

Therefore, the general rule that imposes upon every driver or chauffeur the duty to maintain a rate of speed sufficiently slow to enable him to control and stop his car, is applicable when the danger or obstruction with which he might be confronted is fully visible; but the rule has no

application in case of an actual emergency which he had no reason to expect would appear suddenly.

"As a general rule, it is the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control of his car that he can stop within the distance in which he can plainly see an obstruction or danger ahead. But that rule does not apply to a case where a dangerous situation which the driver of the automobile had no reason to expect suddenly appeared immediately in front of the car." *Jacobs* v. *Jacobs*, 141 La. 272.

For the foregoing reasons the judgment appealed from must be reversed and the complaint dismissed.