**Austin J. SAWYER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 7097, Division "C".

United States District Court
E. D. Louisiana,
New Orleans Division.
Dec. 16, 1963.

Ralph L. Kaskell, Jr., Deutsch, Kerrigan & Stiles, James P. Screen, New Orleans, La., for plaintiff.

Gene S. Palmisano, Asst. U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., Hubert M. Crean, Civ. Div., Dept. of Justice, Washington, D. C., for defendant.

WEST, District Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) et seq., wherein the plaintiff seeks to recover for personal injuries incurred by him as a result of an automobile accident which occurred during the early morning hours of Monday, September 24, 1956. The case was tried to the Court, without the intervention of a jury, and after due consideration of all of the testimony offered in this case, together with the arguments of counsel and the briefs filed herein, this Court is of the opinion that petitioner is not entitled to recover from respondent herein. In connection with this holding, the Court makes the following findings, which shall constitute its Findings of Fact and Conclusions of Law.

Some time during the afternoon of September 23, 1956, petitioner, Austin J. Sawyer, and his brother, Wallace Wayne Sawyer, left Castleberry, Alabama, enroute to New Orleans, Louisiana, in a 1940 model Ford automobile, which had been purchased by Wallace Sawyer about a week previously for the sum of $85. The accident complained of occurred on U. S. Highway 90 between the Rigolets Bridge and the Chef Menteur Bridge in the Parish of Orleans, Louisiana, at approximately 3:00 o'clock a. m. on the morning of September 24, 1956. Commencing at about 4:00 o'clock a. m. on September 22, 1956, and up to and including the time of the accident on September 24, 1956, the United States Weather Bureau in the New Orleans area had been broadcasting hurricane warnings due to the fact that Hurricane Flossie, a very severe hurricane, was in progress. These warnings extended from Texas to Florida, and the Weather Bureau reports indicate that on September 24, 1956, at or about the time of the accident in question, there were winds near 80 miles per hour, accompanied by driving rain, in the area where this accident occurred. Visibility at that location varied from 60 to 100 feet at the most. In this area, where the accident occurred, were both camps and residences of people who lived either permanently or temporarily in the area. During the night of September 23, 1956, and the early morning hours of September 24, 1956, Hurricane Flossie was at its height in that area.

At approximately 11:00 o'clock p. m. on September 23, 1956, officers of the Louisiana State Police Department placed a barricade road block east of the Rigolets Bridge, at the junction of U. S. Highway 90 and U. S. Highway 190 to detour traffic from the use of U. S. Highway 90 during the peak of Hurricane Flossie. Lt. Alford, of the Louisiana State Police Department, remained on duty at the road block until approximately 1:00 o'clock a. m., and only permitted

cars to pass the road block if they were doing so in order to look after the preservation of their property in the area west of the road block. During that night the storm was so severe in the area that military personnel from the United States Army, together with personnel of the New Orleans City Police Department, had been called upon to engage in rescue work, evacuating residents or inhabitants of homes and camps from the area involved. This work was going on at the time of the accident complained of.

In order to conduct this rescue work, the military personnel and the members of the Police Department involved in the work were using two Army DUKWs. These vehicles are approximately 32 feet in length and about 9 feet in height. They are equipped with two tail lights and two head lights, with unlighted reflectors on the rear, and also three unlighted reflectors on each side of the dark green painted vehicles. These vehicles are amphibious in nature, and are capable of traveling both on water and on the highway. On the night in question, the rescue team had gone onto U. S. Highway 90 in order to rescue five occupants of a house occupied by one Mrs. Lillian Landry. One of the DUKWs went off of the highway into the water and proceeded to the house and picked up the five occupants. While attempting to return to the highway, this vehicle got stuck, and the occupants were transferred to the other DUKW which was still on the highway. Then, in order to free the disabled DUKW, the one on the highway attached a cable to it and winched it up onto the highway. After pulling the disabled vehicle onto the highway, the cable connecting the two vehicles was disconnected and the functioning DUKW began to rewind its cable. At this time the disabled vehicle was on the highway at a 45 degree angle with its two front wheels off of the highway on the shell shoulder to the south side of the road. This vehicle completely blocked the east bound lane of the two lane highway, and the rear end of the vehicle protruded into the west bound side of the highway by

about six feet. The head lights and tail lights of both vehicles were functioning and were turned on at the time. The highway at this point is an asphalt-topped highway running east and west, 26 feet wide and having shell-topped shoulders on either side of the asphalt strip measuring about 22 feet. After the disabled vehicle was brought up on the street, it was discovered that its air system had been damaged, and all of its tires were flat. The assisting vehicle, which had pulled the disabled vehicle onto the highway was, at the time of the collision, about 50 feet away from the disabled vehicle on the west side of the disabled vehicle on the shoulder of the road. It was engaged in rewinding its cable which it had previously disconnected from the disabled DUKW. While the vehicles were in this position, which was about five minutes after the disabled vehicle had been pulled onto the highway, the 1940 Ford automobile, being driven by petitioner herein, came down the highway at approximately 35 miles per hour and collided with the disabled DUKW. As a result of this collision, petitioner received personal injuries.

It seems that petitioner and his brother left Mobile, Alabama, some time on the afternoon of September 23, 1956, headed for New Orleans, Louisiana. At the time of the accident they were traveling west on U. S. Highway 90. The Rigolets Bridge, over which they passed, is located 8.8 miles west of the point of collision. The evidence shows that approximately 8 miles east of the scene of this accident was located a gasoline service station, which had a canopy extending from the building out over the pump area. Petitioner contends that he and his brother reached this filling station, which was closed, at about 10:00 o'clock p. m. on September 23, 1956, and that it was raining so hard that they pulled under the canopy to "wait out the storm". They testified that they remained stopped under this canopy from 10:00 o'clock p. m. September 23, 1956, until approximately 3:00 o'clock a. m. the following morning, at which time, according to

their testimony, because of the fact that Wayne Sawyer was suffering from an ulcer and was experiencing some bleeding, they left the filling station and continued on their way. This filling station was located at a point between the junction of U. S. Highway 90 and U. S. Highway 190, where the barricade, according to the policeman's testimony, had been placed at approximately 11:00 o'clock p. m., and the point of collision. Plaintiffs would have the Court believe that they passed this junction at 10:00 o'clock p. m., or one hour prior to the time that the barricade was placed there, and that they then remained for five hours under the canopy at this filling station. They thus contend that at the time they passed the junction of U. S. Highway 90 and U. S. Highway 190 and proceeded along U. S. Highway 90, there was no warning or barricade of any kind to warn them of impending danger. This Court simply does not believe the testimony of the petitioner and his brother to the effect that they remained at this service station for five hours. After hearing the evidence in this case, and after seeing the witnesses who testified herein, the Court has no doubt whatsoever that the petitioner and his brother passed the junction of U. S. Highway 90 and U. S. Highway 190 quite some time after the barricade had been placed there by the police officers, and that they actually drove around the barricade in order to continue along in the prohibited area. This fact is borne out by testimony to the effect that petitioner himself, after the accident, stated to the police officers that they had driven around the barricade, and that the "old car went through that water like a motor boat". There were many inconsistencies in the testimony of this petitioner when viewed in light of his prior written statement and his prior deposition which greatly impaired the credibility of his testimony. The same may also be said concerning the testimony of his brother, Wayne.

At any rate, petitioner proceeded past this barricade and proceeded to drive through the wind, rain and water along U. S. Highway 90 to the point of this collision. Approximately 1,400 feet east of the point of collision was a curve in U. S. Highway 90. For some reason or other, petitioner claims that this curve had something to do with his inability to see the disabled DUKW on the highway ahead. This curve was 1,400 feet east of the point of collision. From the end of the curve to the point of collision, a distance of 1,400 feet, the highway was absolutely straight. By his own admission, petitioner was traveling at a speed of about 35 miles per hour, which, of itself, was enough to constitute the grossest kind of negligence under the conditions prevailing at the time of this accident. Petitioner contends that he did not see the obstruction in the highway until it was "a few feet" in front of him, and he then states that he could have gone around the vehicle, as there was ample room to do so, except for the fact that there was a cable connecting the disabled vehicle with the assisting vehicle. The evidence establishes that no such cable was connecting the two vehicles at the time of the accident, and that there was, in fact, ample room for petitioner to have proceeded around the disabled vehicle had he kept his vehicle under proper control. But in any event, had petitioner been exercising reasonable care in the operation of his motor vehicle, commensurate with existing conditions, he could have brought his vehicle to a stop short of collision.

The evidence clearly establishes the fact that Hurricane Flossie was in full progress at the time of this accident, and that the petitioner had been warned, by a barricade across the road, of the fact that the highway was either impassable or at least that it should be traversed with the utmost care. Barricades are simply not placed across a major highway for purposes other than to inform people of possible dangers ahead. Petitioner traversed this highway, in a raging storm, with utter abandon and with complete disregard for his own safety.

Petitioner contends that the military personnel in charge of the rescue vehicles

were guilty of negligence proximately causing this accident. That these persons were guilty of any negligence whatsoever is highly doubtful in view of the surrounding circumstances, but in any event, whether or not they were guilty of negligence is immaterial in this case. This Court comes to the inescapable conclusion that the plaintiff himself was guilty of the grossest kind of negligence in the operation of his motor vehicle on the night in question, and thus, whether or not the military personnel involved were also guilty of negligence is of no moment.

While a driver of an automobile on a highway has a right to presume that the way is open for safe travel, and while he is not under a legal obligation to be on the lookout for extraordinary dangers or obstructions, Jacobs v. Jacobs, 141 La. 272, 74 So. 992; Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909 (1956); Smith v. Henry, 147 So.2d 416 (La.App.1963); Robards v. American Automobile Insurance Company, 128 So.2d 44 (La.App. 1961); nevertheless, when the driving conditions are abnormal, involving elements such as fog, heavy rain, heavy dust, etc., the responsibility of the driver to keep a sharp lookout is increased. The greater the known hazard, the greater should be the degree of care exercised. Wright v. Home Indemnity Company, 153 So.2d 213 (La.App.1963); Ardoin v. Southern Farm Bureau Casualty Insurance Company, 133 So.2d 129 (La.App. 1961); Hogue v. Akin Truck Line, 16 So.2d 366 (La.App.1944).

In the instant case, not only were the surrounding circumstances abnormal, i. e., a full blown hurricane was in progress, but this petitioner was warned, by the presence of a barricade across the road, of possible danger ahead. Thus, this Court finds that the petitioner herein, under the law of Louisiana, was not exercising that degree of care in the operation of his motor vehicle which was obviously required under the circumstances and conditions prevailing at the time of this accident, and that he was

thus guilty of negligence which was a proximate cause of the accident in which he was involved.

For these reasons, judgment will be entered herein, rejecting petitioner's claims, and dismissing this suit at petitioner's cost.