No. 644

First Circuit

—

NEUMAN v. EDDY.
(SOUTHERN CASUALTY CO., Intervener)

——

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

——

Cline, Plauche & Girod, of Lake Charles, attorneys for plaintiff, appellee.

Vance E. Plauche, of Lake Charles, attorney for defendant, appellant.

Pujo, Bell & Hardin, of Lake Charles, attorneys for intervener, appellant.

ELLIOTT, J. An automobile belonging to and while being driven by James C. Eddy struck a cow on the highway leading from Lake Charles to Alexandria and was thereby overturned, and Axel Neuman, riding therein as the guest of said Eddy, was, as a result, badly injured.

The occurrence took place after dark on October 14, 1928.

The plaintiff urges that his injuries and resulting damages were due entirely to the negligence, carelessness, recklessness and imprudence of the defendant in driving

his car. He claims of him $15,600 as damages on said account.

The defendant denies the negligence, imprudence, carelessness and recklessness alleged against him. He alleges that he was driving on the highway and that the cow ran into the rear end of his automobile; that the collision was unavoidable; and denies responsibility for the occurrence.

Southern Casualty Company, in which defendant has a protective policy to the extent of $10,000 alleges that defendant made two reports to insurer concerning the accident, before and one after the suit, and that the one last made materially differs from the first two. It alleges that it believes that the defendant is aiding and abetting the plaintiff in bringing and prosecuting the suit, and is engaged in assisting him in his effort to develop a case of liability against the defendant, when none in fact exists.

It intervened in the suit and denied that the plaintiff and defendant were in fact host and guest on the trip in which plaintiff was injured, as alleged by the plaintiff; alleges that they were engaged instead in a joint enterprise and venture. It alleges that defendant was driving his automobile along the road carefully when a cow suddenly came out of a herd they were passing and struck the rear end of his automobile without warning, causing it to overturn. That defendant was not responsible for the accident nor liable to the plaintiff on said account. It further alleged that the cows were in plain view of the plaintiff; that he made no protest nor complaint to defendant with reference to his manner of driving while passing them. That therefore if defendant was negligent the plaintiff was also negligent and without right to recover of defendant.

The lower court rendered judgment in favor of the plaintiff for $8,000 with interest.

Defendant and intervener have appealed.

The defense of joint adventure urged in this court, was rejected without being mentioned in the opinion of the lower court.

The automobile in which the trip was being made belonged to and was being driven by defendant. The trip was mutually agreed on; which one of the parties suggested it is not clear. The plaintiff paid nothing for the privilege of going in the automobile, but when they reached Oakdale the morning of the trip he treated the defendant to breakfast, but the evidence does not show that he otherwise underwent any expense. It is not shown that he had anything to do with the control of the automobile. He had no authority in the matter of driving, no right to interfere. The defendant drove as he saw proper without consulting the plaintiff.

The case of Sam Mathews Lawrason v. Eugene Richard, Jr., (La. App.), 129 So. 250, recently decided, involved a defense of this kind. In that case we quoted from Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253, as follows:

"Negligence on the part of the driver of an automobile is not imputable to his guest in the car, nor does one who accepts an invitation to ride in an automobile thereby engage in such a common enterprise or joint venture with the driver, that neither would be liable to the other for an act of negligence."

A number of other authorities was also cited on the subject.

From Ruling Case Law, vol. 15, subject: Joint Adventures, p. 500, sec. 2, we take the following language:

"While it is true that at common law co-adventurers in an enterprise were recognized in courts only when the element of partnership was disclosed and on proof of the essential of a partnership, this is not the law at the present time, and although courts in modern times do not treat a joint adventure as identical with a partnership, it is so similar in its nature and in the contractual relationships created thereby, that the rights as between the adventurers are governed practically by the same rules that govern partnerships. A joint adventure generally relates to a single transaction. The usual test of a partnership as between the parties to a joint adventure is their intent to become partners."

From Cyclopedia on Automobile Law by Blashfield, vol. I, subject: Liability of Private Carriers to Guest, etc., p. 970, sec. 14, we take the following:

"A typical joint adventure in the operation of a vehicle is, where two or more jointly hire a vehicle for their common purpose and agree that one of their members shall drive it, the possession of the vehicle being joint and each having an equal right to control its operation.

"The doctrine of joint adventure as applied to the operation of an automobile owned by one of the occupants should be restricted to cases where the common right to control its operation and the correlative common responsibility for negligence in its operation is either clearly apparent from the agreement of the parties, or is a logical conclusion from the facts found by the triers."

The subject is continued by illustration, but further quotation would add too greatly to the length of this opinion.

The question is considered by the same author in volume 2 under the subject of Imputed Negligence, pages 1137 to 1152. The following is an excerpt from section 31, page 1151:

"The common purpose of riding together for pleasure does not alone establish a joint enterprise for the purpose of imputing the negligence of the driver to his companion, and the owner and driver of an automobile and his passengers can not be deemed engaged in a joint enterprise within the law of imputed negligence, merely because the trip is for the purpose of attending a ball game in which all are interested."

Further illustrations follow but it would require too much space to quote them. The subject may be summed up by saying, that in order to render an automobile trip by two parties a joint adventure, while the driving must be done by one, it must be subject to common authority and right, and as the sole and exclusive right and authority in this case was vested in and exercised by Mr. Eddy, it was not a joint adventure, but the relation was that of host and guest, as alleged by the plaintiff.

The plaintiff and defendant had been on a trip from Lake Charles to a place near Alexandria, and were at the time of the accident, on their return to Lake Charles, going south on the highway, when just north of Kinder and just after dark, defendant driving, they met a string of cows on the highway coming north, estimated at from 10 to 15 head. The cows were walking single file, one behind the other, forming a column, estimated at from 100 to 150 feet long, on the left-hand side of the road going north.

It had rained during the day, but the night was said to be clear. The cows were plainly visible to the plaintiff and defendant under the headlights of their car, say 150 feet head, when they first saw them. The defendant had been driving at a speed estimated at from 30 to 40 miles an hour, but upon seeing the cows he slowed down to about 20 to 25 miles an hour as he came up to them. At about the time they reached the head of the column, a cow,

the plaintiff says, the one at the far end of the line, defendant thought it one near the far end, and at a distance estimated to have been 75 or 100 feet ahead of them, left the line and started walking westward across the road, upon which Mr. Eddy, seeing this movement, immediately speeded up and proceeded faster than he had been going, after having slowed down, his purpose being to pass to the west of the cow before she could reach the side of the road on which he was driving. The road was about 40 feet wide and when the cow got about half across she increased her speed, going into a trot, upon which defendant, who was then distant about 40 feet, seeing her increase her speed, immediately speeded up to a still greater speed, making his car go about as fast as it could in an effort to beat her and pass her before she could get in his way ahead. Plaintiff, speaking of defendant's speed at the time he struck the cow, says it was very fast. Defendant stated that he could not estimate the speed he was going at the time he struck the cow, but that it was about as fast as he could go. The front part of his automobile got past the cow but the hind part struck her as it passed, the collision causing it to overturn.

The plaintiff and defendant were the only witnesses to the occurrence; their statements are not exactly alike, but the difference between them is unimportant.

The intervener claims that plaintiff and defendant are colluding for the purpose of making out a case of liability, to fall on insurer, when no liability in fact exists.

The plaintiff and defendant are old-time friends. At the time of the trial the plaintiff was 64 and the defendant 70 years of age, and they had known each other for 25 years or more. Following the accident the defendant made a report of it to the intervener, and subsequently made a second report.

The suit filed notified intervener of plaintiff's allegation that defendant, after seeing the cow, which had turned out of the column and started westward across the road, increase her speed, had in turn immediately increased his in an effort to pass her before she could reach the side of the road on which he was driving. This fact not having been mentioned in defendant's previous statement, defendant called on him for a third statement, which was furnished. This statement bears date August 16, 1929, and with reference to the matter mentioned, says:

"On the night of October 14th, 1926, coming south about one half mile north of Kinder, I was driving a Ford car at a rate of 30 or 35 miles per hour. We met a herd of cows, about 10 or 12, walking single file on the east side of the road. I slowed down to about 20 miles an hour until I saw a cow turn out to cross the road ahead of me about 75 or 80 feet. I increased my speed, to what rate I do not know, to head off and pass the cow on the west side of the road. The cow collided with the rear end of the car, which caused the car to skid and overturn," etc.

The record does not indicate that defendant at the time of making his reports previous to the suit was aware of the importance of the matter mentioned in fixing on him the responsibility for the accident. The report he made to intervener following the accident was very brief. That of January 29, 1929, was more detailed than the first, but the incident of the cow increasing her speed after getting about half way across the road, and that upon seeing her do so, defendant immediately increased his, in an effort to beat and pass her before she could get to the

side of the road he was on, was not mentioned. Defendant testified on the trial that his last report was correct. He was not asked to explain how it came about that the statement made in his last report came to be omitted from the two made before the suit was filed. The matter is left open for inference, and the inference is in favor of candor and truth.

There is no evidence that the plaintiff was aware at the time the suit was filed that defendant had protective insurance, but due to the long friendship that had existed between the parties and their continued friendly relations, we think it probable that plaintiff was aware that such was the case. Therefore assuming that plaintiff had such knowledge before suit and giving to the assumption all the weight to which it is entitled, in connection with defendant's failure to mention in his reports previous to the suit, the incident mentioned in the one made after suit, we are not satisfied that collusion exists. Intervener, however, is not to be blamed for being suspicious.

The duty of a host to his guest, under the circumstances in which plaintiff and defendant were driving, is stated in Jacobs v. Jacobs, supra. We quote from the syllabus:

"The driver of an automobile who has invited a guest to ride with him is not absolved from responsibility for negligence or imprudence merely because he is performing a gratuitous service or favor to his companion.

"Although an invited guest of the driver of an automobile, being a mere licensee, is not entitled to the consideration due by a carrier to a passenger for hire, he is nevertheless entitled to the benefit of the provision of the Civil Code, that any act of negligence or imprudence that causes injury to another obliges him who was at fault to pay for the injury.

"As a general rule it is the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control of his car that he can stop within the distance within which he can plainly see an obstruction or danger ahead. But that rule does not apply to a case where a dangerous situation which the driver of the automobile had no reason to expect, suddenly appeared immediately in front of the car. * * *

"The driver's duty and responsibility to his guest in an automobile is merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger of the occupation. The responsibility of the driver of an automobile, for the safety of his guest in the car is not limited to his duty to abstain from acts of gross or willful negligence, but demands that he avoid the ordinary negligence or imprudence referred to in the Civil Code."

In Timberlake v. Cassidy, 1 La. App. 630, a case similar to the present, it was said, p. 635:

"It is inferable from the evidence that the intersection was reached, danger seen and automobiles overturned almost simultaneously, that is, so quick that nothing she could have said or done could have averted the collision. It was the duty of the defendant to exercise reasonable care and precaution for the safety of his guest, without requests from them to that effect, and reasonable care required him not to run by such a place at a speed which forced on them the involuntary jeopardy of a chance escape. Gross negligence and willful recklessness is not necessary under the law, to his responsibility, neither must that active care appear which the law requires when passengers are carried for hire. But he was under the obligation and duty to his guests to exercise reasonable care and prudence for their safety and to drive accordingly."

Brock v. Friend, 4 La. App. 720, is another similar case. In that case it was said, page 721, one judge dissenting:

"The evidence shows that Mr. Friend did

not exercise reasonable care for the safety of Dr. Brock. His driving was heedless, recklessly fast, and when he entered a sharp curve in the road he was running so fast that he could not guide nor control his car."

On page 722 it was further said:

"The death of Dr. Brock was due solely to the fault and imprudence of Mr. Friend in driving his car on the road at a speed beyond his control, and it overturned as a result of its excessive speed in rounding a curve. In acting as he did he took no care for the safety of Dr. Brock. He owed him the duty of reasonable care while riding in his car by his express permission."

On the subject of speed see also Act 296 of 1928, sections 4 and .5. In this case the evidence shows that if the defendant had maintained the speed to which he had slowed down as he came up to the head of the string of cows, he could and would no doubt have passed them all; the one that turned out at the far end of the line as well as the others, without accident.

The cow that left the line and turned westward across the road was so far from him at the time that he could have easily stopped before reaching her if he had tried, or he could have easily swerved and passed to the left of her in the road ·without stopping. The accident could have been easily avoided by taking· the precaution plainly to be seen under the headlights of the car. It seems a necessary conclusion that defendant's act in increasing his speed to as fast as he could go when he saw the cow increase 'her speed, with the view of beating her in a race and passing ahead of her in the road on the side on which he was driving, must be accounted an act on his part in driving, as a gross fault, within the meaning of the law, Civil Code, arts. 2315 and 3556, subd. 13, and negligence and imprudence for which he

cannot be excused. His act deprived his guest of the reasonable care while riding in his automobile, to which he was entitled under the law, subjected him to involuntary, unnecessary and uncalled for peril, brought on· him great personal injury, long endured suffering and very serious financial losses and damages, all of which defendant is obliged to repair, as near as it can be done.

Intervener contends that as plaintiff saw the cow turn out of the line westward across the road, saw her increase her speed and saw the danger, all as well as the defendant, he was negligent in that he did not caution nor warn the defendant, nor protest against his act in trying to pass the cow before she could get to the side of the road on which he was driving. The burden of proof was upon intervener to show that the plaintiff was guilty of contributory negligence, the same as it is on the defendant Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L.R.A. 334, 104 Am. St. Rep. 455. Plaintiff's negligence in the matter does not appear. From the time the cow increased her speed and defendant increased his in order to meet that of the cow, until the collision occurred, the space of time was too short in which to warn defendant about the danger or to protest against his act. Defendant, starting suddenly and without notice to plaintiff, was within striking distance before his act could have been recalled. It seems to us that the fault and negligence was solely and entirely that of the defendant, and it is a case in which the claim of the guest must be allowed.

The case was correctly decided against the defendant and intervener in the lower court.

The plaintiff for answer to the appeal

of defendant and intervener has prayed that the judgment be increased from $8,000 to $15,600. We do not think that plaintiff's request should be granted.

The intervener contends that the judgment ought to be reduced on the ground that it is excessive. Plaintiff could hardly walk at the time of the trial, some nine months after the injury. His injured leg is two inches shorter than the other. He has suffered greatly and for a long time and is crippled for life. His expenses for drugs, medicine, nurses, doctors, hospital fees, etc., amount to a large sum. In addition to this he has sustained important losses in his business. According to the physicians, plaintiff suffers from an ailment which existed prior to the accident, and his physical condition would be better than it is if it had not been for this ailment. The extent that this ailment has contributed to plaintiff's present condition is a matter which cannot be figured out.

The matter is difficult to deal with. We think that the judgment should be reduced to $6,500, the amount to bear 5 per cent per annum interest from July 2, 1929, until paid.

For these reasons the judgment appealed from in favor of the plaintiff and against the defendant is reduced from $8,000 to $6,500 with legal interest thereon from July 2, 1929, until paid, and that the defendant pay the costs in both courts.

And the judgment in favor of James C. Eddy against Southern Casualty Company is accordingly reduced to $6,500 with 5 per cent per annum interest thereon from July 2, 1929, until paid, and defendant is given judgment against the intervener for all the costs that defendant is required to pay to the plaintiff.

As thus amended the judgment appealed from is affirmed.