This is a suit for compensation for total, permanent disability. The plaintiff's claim is based on an accidental injury which he alleges occurred on January 30, 1945 and in which he sustained an inguinal hernia on his left side.
The facts briefly stated are as follows:
Plaintiff who is a man a little past sixty years of age had been employed by the *Page 713 
Crowell Long Leaf Lumber Company, Inc., one of the defendants, for more than twenty years. He held various jobs until he had quite a responsible position, having charge of the lumber yard and superintending the shipping of lumber by railroad. He earned good wages and it is not disputed that if he is entitled to recover, his award should be for the maximum amount of $20 per week.
Sometime in the year 1940 he claims that he ruptured himself while on the job. He seems to have done nothing about it until, he says, he was forced to on account of his condition and spoke to Mr. R.D. Crowell, Jr. He does say that he had acquainted the company officials with the fact that he had sustained that hernia but at their request, because of the shortage of labor, he was persuaded to stay on the job. In October, 1944 his condition became so aggravated that he could no longer continue to work and he told Mr. Crowell he would like to be attended to. An operation was suggested and on October 4, 1944 one was performed by Dr. P.K. Rand of Alexandria. The defendant company paid all expenses. He stayed in the hospital the usual length of time after such an operation and remained quiet, without working at all, until January 15, 1945, when he went back to the same job as shipping clerk. He worked two weeks and then, for some reason or other, a hernia developed at the site of the operation and that is the hernia which forms the basis of his claim in this suit.
It is not controverted that he had a hernia at the same spot in January or February, 1945, but his claim is resisted by the defendant lumber company and its insurance carrier, the other defendant, on the ground, first, that he did not sustain an accident as he claims happened on January 30, 1945 and which produced this hernia, and secondly, that this present hernia is simply a recurrence of the former hernia; that the operation which had been performed in October, 1944 had not been satisfactory and in fact the hernia he had then had never been entirely corrected and his present condition is simply a recurrence of that condition.
On these disputed points the case went to trial in the district court where there was judgment in favor of the plaintiff and against both defendants awarding compensation as prayed for.
The first disputed point relates to the accident which plaintiff alleges happened on January 30, 1945, and in which he claims he hurt himself and sustained a hernia. Plaintiff's duties as shipping clerk and as superintendent of the yards and sheds of the defendant company called for considerable walking back and forth and especially when inventories of the lumber on the yard had to be made he was required to do a good bit of climbing on lumber stacks. In superintending the loading of lumber in box cars he had to walk a good bit also and had to step from the loading platform into the box cars, and as there was quite a difference in height between the two, he had some climbing to do there also.
In relating how the accident occurred he states that on the afternoon he was injured he was in a box car and in climbing out of it onto the loading tram which was maybe five or six feet higher, his foot slipped and he had to hold himself on a roller bar or cross bar to keep from falling to the ground. He says that he felt a stinging sensation in his side right then and after he balanced himself he sat down in the car. He felt nauseated and was sick at his stomach, remained there for some twenty or thirty minutes, then got out of the car at a place where he did not have to climb and went to his office. Perhaps forty minutes or an hour after he went to see the company doctor, Dr. Hartzog, who told him that there was evidence of the development of a hernia and that he would take the matter up with the company officials and have something done about it. He advised him to take it easy and to stay off his feet as much as possible. Dr. Hartzog also told him that he was going to write to Dr. Rand, which evidently he did as Dr. Rand admits that he received a letter from him about that time. He followed Dr. Hartzog's advice about taking it easy and keeping off his feet as much' as possible, went back to see the doctor who at that time told him that he had the forms necessary *Page 714 
to make the report of his accident and, he presumed, when he saw him writing on one of these forms, that that was what he was doing. He is not certain as to the date of his last visit to Dr. Hartzog but fixes it about February 15th. He continued working and at the end of February, his work was terminated by the defendant lumber company.
[1] The defendants take the position that plaintiff's testimony is the only evidence regarding any accident such as he described. We find however that he is corroborated to this extent: that on the same day he claims that he sustained this accident he went to see the company doctor and the fact that he did is corroborated indirectly by Dr. Rand, defendants' own witness, who admits that he received a letter from Dr. Hartzog just about that time. It is unfortunate that Dr. Hartzog was not available as a witness as it is shown by the record that he had left Alco, the place where the plaintiff was employed and no-body seems to know what his present address is. Besides this, a witness by the name of G.L. Hames who worked with the plaintiff, in the same department, testified that some time after January 15th, maybe ten days or two weeks, plaintiff told him about having sustained an accident. Defendants' counsel make the point that that is the only reference that was made by him to any one about an accident, and apparently he told no one about it at the time it happened. The testimony is to the effect however that plaintiff is a very reticent man; one of those who likes to keep his troubles to himself and the fact that he did not go around telling people that he had had an accident and sustained an injury is not proof that he did not actually have the accident. We believe therefore that there is sufficient proof to support the claim of plaintiff's accident and that applying the rule as laid down in the case of Sumrall v. E.I. Du Pont, La. App., 1 So.2d 430, plaintiff should not be barred from recovery simply because he was unable to produce an eyewitness to the accident, when his explanation of it is otherwise, corroborated by surrounding circumstances such as we find in the record.
[2] Incidentally we might mention at this point that defendants also seem to contend that they were not given notice of the accident as required under the compensation statute. However as we have just stated, plaintiff went to Dr. Hartzog, the company doctor, a few minutes after he claims the accident happened and that we hold was sufficient compliance with the requirements of the statute as to giving notice. Moreover plaintiff's testimony is that Dr. Hartzog told him that he would take the matter up with the officials of the company and he had a perfect right to rely on the doctor doing so. We think that the requirements of the law are fully satisfied when an accident and injury is reported to the company doctor, who after all is the one an injured person will first think of going to after he has been injured.
The next disputed point and more serious perhaps, than the others, is whether the hernia plaintiff is presently suffering with is a new hernia or simply a recurrence of the old hernia for which he was operated on October 4, 1944.
On that point a great deal depends upon how the evidence is to be resolved regarding the outcome of the operation on the first hernia. If, as plaintiff claims, the condition at that time was corrected and he was told so by Dr. Rand and permitted by the latter to go back to work, it would seem that that bears out his contention that this is a new condition which grew out of the accident of January 30, 1945. There is a lot of argument about the term that is used in stating what happens when an operation for hernia is performed. Plaintiff's counsel, in examining the doctors, frequently used the term that the hernia had been "removed," whereas, counsel for defendants and some of their doctors say that that is not the proper term to use and that the condition is one that has been "corrected." For the purpose of deciding the question here at issue, it seems to us that it does not make much difference which term we use, as what we are concerned with is what was the result of that operation.
Plaintiff and his wife both testified in terms that are very positive, that when plaintiff was still in the hospital, Dr. Rand *Page 715 
seemed to have been very well satisfied with the operation and told them that it was a success. In fact he told them that several times. He was discharged from the hospital on November 6, 1944 and according to them plaintiff was told by the doctor to go home and not to exert himself. Several weeks after, in going through Alexandria, he stopped at the doctor's office for a checkup and, he says, the doctor put him through a complete examination after which he told him that everything was alright, that he could go back to work at once. At that time plaintiff is positive that he did not have any lump in his side. Plaintiff's wife was not present while this examination was going on and therefore does not know anything about it. The fact is however that on January 15th, after waiting two weeks longer than the doctor had told him to, he reported back for work and, he says, Mr. Perry, who was, superintendent of the plant at that time, told him right then and there that they were expecting him. Apparently Mr. Perry had received notice from some source that he was coming back to work and the only source, we believe, from which that information could have come, in the usual course of such matters, would have been from the doctor who had charge of the case. Mr. Perry does not deny that he knew that plaintiff was coming back to work. In fact he says that he knew it; that the office had informed him. He says he does not know who it was that said it but some one told him that plaintiff was coming out "next week." Whether the information came direct to Mr. Perry from Dr. Rand or whether it came from Dr. Rand to Mr. Perry through the office, does not make any difference. The fact is that plaintiff was told that he could go back to work and in our opinion the only man who was competent and qualified to tell him to go back to work was Dr. Rand himself.
Dr. Rand tries to impress the court in his testimony that he was not satisfied with the results of his operation. He seems to take the position as most doctors would, that he does not like to admit that it was not a success so he states that "he was disappointed" at the results. He says that the condition was not satisfactory to him because the incision did not heal properly and that he could not get the plaintiff to take the proper medicine and nourishment which would promote healing. From this he seems to have formed the impression that the hernia was never corrected, but when asked the direct question whether it is his opinion that this is the same hernia plaintiff had when he was operated on, he says, "Well, that is a hard question, to say it is the same hernia." Dr. Rand denies that he told plaintiff and his wife on November 6, 1944, when plaintiff was discharged from the hospital, that the operation was a success and he also denies that he put him through the thorough examination which later on plaintiff says he gave him. But when asked whether it was a fact that he told plaintiff on that day that he could go: back to work his answer is that he does not know about that. When asked if he would deny it he says, "No, I don't remember." He qualifies that answer with some explanation which is not pertinent to the point whether he actually told the plaintiff to go back to work or not and, when all his statements are taken into consideration with the other facts and particularly the fact that Mr. Perry told plaintiff that they were waiting for him when he returned to work on January 15, 1945, we would say that there is sufficient proof in this record to hold that Dr. Rand did tell the man that he could go back to work. Obviously he would not have told him if he had not recovered sufficiently from the operation and if, also, as contended on behalf of the defendants, he still had a hernia condition.
[3] These are the essential facts in the case on which it has to be decided and, construing them as we have, we conclude that the judgment of the trial court is correct. Certainly no manifest error appears.
Judgment affirmed at the costs of defendants, appellants herein. *Page 716