GLADNEY, Judge.
This is an action brought by plaintiff, Judie Mae Williams, to recover damages for the death of her husband, John C. Pogue, who died as a result of burns received in an accident in which four other persons died and George Stewart and Glen F. Maxie received serious injuries. George Stewart and Glen F. Maxie have instituted separate suits which were consolidated with this case. After trial, the’ district, court rendered judgments denying the demands of the several plaintiffs, all of whom have perfected appeals.
Certain colored civilian employees at Camp Polk obtained a used school bus to transport them to and from work to their homes at or near Many and Florien, Louisiana. The arrangement was shared by all. On the morning of January 5, 1952, Elijah Mitchell was driving the bus and had received as passengers John C. Pogue, George, Stewart, Glen F. Maxie, Jack Barton' and others. The bus was proceeding south near Leesville on U. S. Highway No. 171 about 7:00 o’clock a. m. when the driver pulled off the paved portion of the highway onto the shoulder of the road to pick up Jack D. Scott, who was to ride to his employment at Camp Polk. When Scott had gotten on the bus it started and almost immediately the bus turned partly over, lodging against a utility pole in such a manner that the front door was fastened and the passengers, of whom there were *24 fifteen, could not escape through it. When the bus partially turned over an oil stove which was being carried for the purpose of providing warmth to the passengers, turned over, spilling oil and filling the whole interior of the bus with flames and smoke. In this manner plaintiff’s husband received injuries from which he died.
To establish her cause of action plaintiff relies upon the doctrine of respondeat superior in order to hold Jack Barton, the defendant herein, responsible for the acts of the driver, Elijah Mitchell. The negligence of Mitchell is charged in several respects, enumerated as follows:
(1) Driving off the paved highway onto the shoulder thereof where the driver knew or should have known that it was wet, slippery, soft, boggy and unsafe;
(2) driving onto the unsafe shoulder of the highway at too rapid a rate of speed under the circumstances ;
(3) failing to keep a proper lookout and sufficiently observe the condition of the place onto which he drove;
(4) by carrying a lighted oil heater in said bus body without having same securely fastened or attached in a manner to prevent same from overturning, and
(5) by driving onto said dangerous and unsafe place with knowledge that said lighted oil heater was in the bus, and without giving petitioner’s said husband or any of the other passengers warning of his intention to drive off the paved portion of said highway and thus give petitioner’s said husband or any of the other passengers an opportunity to either extinguish said oil heater or to secure it in a manner to prevent its overturning.
By way of defense, defendant first filed an exception of no cause and no right of action, and a plea of prescription. The exception of no cause and no right of action does not appear to have been passed upon by the trial court and has not been argued on the appeal, and consequently is considered as abandoned. The plea of prescription was overruled. It has not been argued on appeal. The defendant, by answer, denied that Elijah Mitchell was his employee, denied that the accident was caused by any negligence on the part of Mitchell and averred that the defendants, Pogue, Glen F. Maxie and George Stewart, and others, all were engaged in a joint venture and that, therefore, the negligence of Mitchell, if any, is imputed to the decedent, Pogue. Further answering, in the alternative, defendant pleaded the contributory negligence of the deceased John C. Pogue.
For the purpose of imposing the burden of proof upon defendant, counsel for plaintiff attempt to invoke the doctrine of res ipsa loquitur. In support of this position plaintiff relies upon the case of Loprestie v. Roy Motors, Inc., 1938, 191 La. 239, 185 So. 11, but the authority is in-apposite since the doctrine has application only where the plaintiff could not be expected to have information as to the causes of the accident.' In the instant case the deceased and other passengers were as cognizant of the events leading up to the accident as was the driver, Elijah Mitchell, or the defendant, Jack Barton. There arises, therefore, no presumption the accident could not have happened except through the negligence of the operator of the vehicle.
The manner in which the bus overturned is described by certain witnesses, thusly:
Glen F. Maxie testified:
“Q. How did that accident happen, Jack — I mean, Glen? A. Well, he swung off the side to pide up Jack D. Scott and well, he started up and turned over against a post.
“Q. Then what happened? A. The heater — when it turned over, the heater caught up and exploded, I believe.
“Q. When he drove up there and stopped, did he drive up slow and easy or fast or how? A. He pulled off pretty fast.
*25 “Q. You say he ‘pulled off’, pulled off what? A. The highway.
“Q. He pulled off the highway? A. Yes, sir.
“Q. Where did he go? A. Off on the right.
“Q. On the shoulder of the road? A. Yes, sir.
“Q. And when he started up, is that when the bus turned over? A. Yes, sir.
“Q. And that was when the fire started, when the bus body turned over? A. Yes, sir.”
George Stewart gave this version:
“A. Just below, south of Leesville, leaving out of Leesville, he stopped to pick up a passenger and he got off the highway and—
“Q. He? Who did that? A. Elijah.
“Q. Alright. A. He gets off the highway — sees the passenger in front and he gets to the side and ran right into him and he stopped, got on the brakes, and this boy walked around the bus and got on and just as he got on— I didn’t look back to see how he got on, and set down, but just as he got on somebody said, ‘Let’s go’, and he started the bus up and when he started it, it turned like this and—
“Q. Turned like what? A. Turned to the right and hit a telegram pole.
“Q. Did it fall on its side? A. Yes, sir.”
Trooper J. D. Brown, who appeared on the scene shortly after the accident occurred, testified:
“Q. What was the nature of the location where the accident happened, the roads and shoulders, etc. ? A. Well, where it happened the shoulders were good. The driver pulled off on the shoulder to pick up a passenger. They were good and it looked like he pulled too close to the edge of the ditch and it was just straight down and the bus fell on its side.
“Q. The bus turned over on its side? A. It was on the side but it never did hit the ground completely because there was a telephone pole and high line and it was within a foot or two of the ground.
“Q. Was the ditch deep enough that it might have turned over if it had not been for this pole holding it? A. Oh, yes, it would have laid plumb down on its side but when the bus got over on the pole it never did get far enough down to lay completely down.”
« * jjt ‡ * ‡ ij<
“Q. On ‘Road Conditions’ you have checked that the roads were dry and the shoulders were defective? A. The defective part would be that they just crumbled under the bus.
“Q. That would be that they just crumbled off under the bus? A. That’s right.”
Queried as to the condition of the shoulder Maxie testified there was nothing to indicate anything dangerous about it, and Stewart also testified that he saw nothing wrong with the shoulder where the bus pulled off. Similar testimony was given by Reece Medlock.
The evidence is uncontradicted that the stove which caused the catastrophe was purchased by Ruby Lee Davis and Nancy Johnson with the consent of all the riders. Claude Hill’s testimony as to this fact is not contradicted. He testified:
“Q. Let me read to you that portion of the statement, on page 2. ‘The stove was put in the bus by Ruby Lee Davis and Nancy Johnson, with the consent of all the riders of the bus. It was the riders that all wanted the heater, not Jack. He, at first, wouldn’t let us have it, but finally these girls bought it and put it in. All the passengers knew the stove was dangerous and not bolted down, but we were all *26 willing to take the risk to keep warm.’ That’s what you told me, isn’t it? A. That’s right. They went in the store and when they come out they had the heater, but I didn’t go in the store.
“Q. This statement is correct? A. We all wanted the heater.
“Q. You all wanted the heater? A. Yes, sir.
“Q. Isn’t it true, Claude, that the driving of the bus was split up among the riders? In other words, different riders drove the bus? A. Yes, sir.”
The record furnishes no proof that Elijah Mitchell was an employee of Jack Barton. Jack Barton first attempted to buy a used school bus for the purpose of conveying employees to and from Camp Polk in the names of all those participating in the venture. When this was not acceptable to the vendors' of the vehicle Barton secured the consent of those involved to permit him to purchase the bus in his name. Thereafter, he, Mitchell, and others took turns in driving. At the time of the accident Barton was seated in the rear of the bus with Pogue; Stewart, Maxie arid others. Barton, as- did all of the* other transported workers, contributed to transportation costs variously fixed at sums of from fifty cents to one dollar per trip per passenger. These funds were used for the purpose of defraying the expense of operation and also for making payments on the cost of the bus. The evidence also shows that the funds used by Ruby Lee Davis and Nancy Johnson to purchase the oil heater came from the common contributions of the riders.
As above pointed out, the record is" entirely devoid of any evidence to confirm the alleged relationship of respondeat superior between Jack Barton and Elijah Mitchell. This finding is sufficient to sustain the judgment from which appealed.
Although in many jurisdictions the authorities reject the doctrine of joint enterprise as a defense, Louisiana has accorded recognition. In Squyres v. Baldwin, 1938, 191 La. 249, 185 So. 14, 19, the Supreme Court said:
“ ‘To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.’ 45 C.J. sec. 588, pp. 1031, 1032. See, also, Bofill v. New Orleans Ry. & Light Co., 135 La. 996, 66 So. 339, L.R.A.1915C, 419; Daull v. New Orleans Ry. & Light Co., 147 La. 1012, 86 So. 477; Churchill v. Texas & Pacific Railway Co., 151 La. 726, 92 So. 314; Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A.L.R. 148.”
In Blashfield’s Cyclopedia of Automobile Law and Practice, Permanent Edition, Volume 4, page 500, the following rule of application is given:
“A typical instance of adventure in the operation of a vehicle is afforded by the situation where two or more hire a vehicle jointly for their common purpose and agree that one of their members shall drive it; the possession of the vehicle being joint, and each having an • equal right to control its operation.”
Cited as being in accord with this doctrine is the Louisiana case of Neuman v. Eddy, 1930, 15 La.App. 45, 130 So. 247; in which case, however, the court did not therein find plaintiff engaged in a joint adventure. We can hardly conceive of a case where the facts presented could be more consistent with a holding of joint venture than in the instant case. Barton surely had no more control over the operation of the vehicle than did Pogue, Maxie, Stewart or any other of the riders, all of whom enjoyed equal possession of the vehicle and, therefore, an equal right to control its operation.
Reverting to the specific charges of negligence, we observe the record does not in fact disclose negligence on the part of *27 the driver, Elijah Mitchell. The testimony indicates the shoulder gave away under the two right wheels of the bus immediately .after the bus started from a stop position. Maxie, Stewart and Medlock testified the shoulder gave no outward appearance of -danger. Trooper Brown found upon his investigation that the shoulder caved under the wheels of the bus. The allegations that the driver of the bus was negligent in driving onto the unsafe shoulder at too rapid a rate of speed is unsupported by proof. All ■of the witnesses agreed that the accident •did not occur until after the bus had stopped ;and then started up.
In conclusion we find that the rec•ord fails to establish any responsibility of Barton for the acts of Elijah Mitchell under the doctrine of respondeat superior; that ■all of the riders in the bus, including Jack Barton, Elijah Mitchell, the deceased husband of plaintiff, Glen Maxie, George Stewart and others were engaged in a common ■enterprise or joint venture and the negligence, if any, of the driver must legally be imputed to each of them., None of -the charges of negligence have been established.
For the foregoing reasons the judgment from which appealed is hereby affirmed.