92 So.2d 473 (1957)
Ralph J. FRANCE
v.
CITY OF NEW ORLEANS.
No. 20805.
Court of Appeal of Louisiana, Orleans.
January 2, 1957.
Applications for Rehearing Denied February 4, 1957.
*474 Henry B. Curtis, City Atty., and Edgar Corey, Asst. City Atty., New Orleans, for defendant and appellant.
Henican, James & Cleveland, Murray F. Cleveland, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
Plaintiff instituted this workmen's compensation suit on November 3, 1953, averring that while in the employ of the City of New Orleans in its Sanitation Department in the capacity of street sweeper, he met with an accident on November 4, 1952, by virtue of which he sustained a double hernia which has incapacitated him from doing work of any reasonable character, and his prayer is for a judgment for compensation for a period of 400 weeks at the weekly rate of $27.625.
The City of New Orleans did not file its answer until October 4, 1955, or nearly two years later. The answer admits that plaintiff's employment was within the purview of the workmen's compensation law, but denies that plaintiff met with an accident. The City also alleges:
"* * * that although respondent's examining physicians were of the opinion that plaintiff's hernias had not recurred and no further surgery was necessary, at plaintiff's insistence, respondent paid the entire cost of another operation performed at the Hotel Dieu by a physician of the employee's selection in the latter part of 1954."
In the lower court plaintiff recovered a judgment for compensation at the rate of $27.625 per week for 400 weeks beginning November 4, 1952, subject, however, to a credit of 137 weeks and 3 days at the same rate, covering the period between November 4, 1952, and June 23, 1955; the judgment also fixed the expert witness' fee of Dr. James T. Nix at $75.
The City of New Orleans has perfected this appeal to which plaintiff has filed an answer; he complains that the credit allowed the City against the 400 weeks' compensation awarded him is excessive, and his prayer is that the credit be reduced to 18 weeks which is the actual number of weeks compensation that was paid to him.
Plaintiff has an unusual history of hernias. He is an obese individual, 40 years of age, with a third grade education; his height is 5 feet 9 inches and he weighs 235 pounds. About June, 1950, he applied for a job in the Sanitation Department of the City of New Orleans and was given a preemployment examination; however, when the examining physician found that he was suffering from a hernia, he was told that it would be necessary that the condition be corrected before he could be approved for *475 employment. Plaintiff was operated on shortly thereafter at Charity Hospital, and after his convalescence he reported back to the doctor representing the City. He was re-examined and he states that the doctor found him "solid as a rock." He was hired as a helper on a garbage truck.
There is no dispute that while on this job plaintiff met with an accident during August 1950. It appears that he slipped off a garbage truck and grasped a handle to break his fall with the result that his body received a violent jerk. Nor is there any dispute that as a result of this particular accident he sustained a hernia on his right side. Dr. C. P. Holderith, one of the City's physicians, performed an operation two days afterward and eight weeks later plaintiff returned to his usual duties on the garbage truck. He declares, however, that there still remained a knot on his right side which approximated the size of a baseball.
Plaintiff continued working on the garbage truck until about November 10, 1950, when the knot on his right side bothered him to such an extent that it was essential that he again submit to surgery. As a result of this third operation, he was incapacitated until about May or June 1951. He again returned to work in the Sanitation Department, but this time instead of being placed on the payroll as helper on a garbage truck, he was assigned to a street sweeper's job.
Plaintiff claims that on November 4, 1952, notwithstanding that his classification was that of street sweeper, his foreman ordered him to lift cans containing mud and to dump the contents and that in the exertion entailed in lifting a can weighing 30 pounds about waist high, he felt a sharp pain on his right side. He says he told the man with whom he was working of the incident and also reported the occurrence to Richard Joy, his foreman.
Plaintiff states that about November 20, 1952, he went to City Hall and made complaint about the accident. He was sent to Dr. Holderith, who in turn referred him to Dr. N. J. Tessitore, another of the City's doctors, for examination. Dr. Tessitore found a weakness on the right side of the groin, a scar on the left side and two scars on the right side, but he declares there was no evidence of any pathology.
Plaintiff maintains that he suffered constant and intense pains in the groin which forced him to remain away from the job on sick leave for a period of one week and that then "they sent me back to work," so he returned to the street sweeping job and did not stop working until November 2, 1954, and during the whole period he earned the same rate of pay as other employees in his classification.
Undoubtedly plaintiff worked in pain. No doubt that the efforts took exceptional fortitude, but, at any rate, he seems to have done everything required of him and in a manner satisfactory to his superiors. There is not one word of testimony from any one to the effect that he did not fully earn his wages or that the work he performed was lighter than his usual job called for. With all due respect to Dr. Tessitore, we believe that plaintiff labored under the disadvantage of three hernias all the while.
After his return to the employment subsequent to the accident of November 4, 1952, plaintiff attempted to persuade the City of New Orleans to consent to paying the expenses of an operation to correct his condition, but it seems that the City was adamant in refusing to do so; ultimately, however, defendant agreed to pay for an operation and Dr. James T. Nix, plaintiff's private physician, performed a herniaplasty on November 2, 1954.
This suit was filed prior to the operation and at a time when it appeared to plaintiff that the City of New Orleans would never agree to pay for a corrective operation. A noticeable and significant fact is that the suit lay dormant until the answer was filed on October 4, 1955. The fact that so many months intervened between the institution *476 of the suit and the filing of the answer would tend to corroborate plaintiff's statements that he was endeavoring all the time to have the City agree to bear the expense of the operation. On his behalf plaintiff's attorneys also addressed a letter to the City regarding the subject matter.
After Dr. Nix performed the operation, plaintiff made no further attempt to return to work as a street sweeper until June 20, 1955, when he was rehired, but he was unable to remain on the job after three days. He states he could not carry on his duties because of the exertion the job demanded and that he was fired by his superintendent when he could not work the whole "route." He testified that he endeavored to make the superintendent understand the reason why he could not do all of the work, but that his explanations were without avail. He requested, but was refused, the job of night watchman.
The first contention made by the City of New Orleans is that plaintiff has not successfully borne the burden which the law imposed upon him of making out his case with legal certainty, the basis of the contention being that plaintiff's unsupported statement that he was hurt is not corroborated by the testimony of witnesses who were available to him. The argument is that plaintiff should have produced as witnesses the foreman to whom he claimed he reported the accident and also the fellow worker who, he says, was present and knew that he had been hurt.
The plaintiff stated that while lifting the heavy can he strained himself and felt the sharp pain in his groin, and we think that plaintiff testified truthfully.
The testimony of an injured workman may be sufficient to prove the occurrence of an accident if it is plausible and consistent and is supported by other circumstances appearing from the record. O'Connor v. American Automobile Ins. Co., La.App., 32 So.2d 624; Cascio v. Standard Oil Co. of New Jersey, La.App., 32 So.2d 66; Wherland v. Crowell Long Leaf Lumber Co., La.App., 26 So.2d 712; Dolhonde v. Gullett Gin Co., La.App., 25 So.2d 104.
Counsel say that the testimony of Dr. Nix, plaintiff's medical expert, has the effect of weakening plaintiff's testimony and demonstrates that there was no accident on the date plaintiff states he felt the sharp pain. They point out that Dr. Nix made an examination on October 28, 1952, and another on November 20, 1952, and that as between the two dates he saw little difference in plaintiff's condition. Our attention is particularly called to Dr. Nix's assertion that plaintiff "mentioned something about an accident" on the earlier date. Dr. Nix made no written memorandum that any such statement had been made by plaintiff and his testimony, four years later at the trial, was entirely from his independent recollection that such a statement had emanated from plaintiff on the October 28, 1952, visit. It seems to us that plaintiff could just as well have "mentioned something about an accident" on November 20, 1952, rather than at the former time.
As a matter of fact the testimony of his physician bolsters plaintiff's claim that there was an accident on November 4, 1952. When Dr. Nix examined him on October 28 plaintiff had a hernia on the right side and one on the left side, but when he next saw him on November 20, he had one weakness on the right side but that there were two weaknesses on the left side. This inevitably would lead us to the belief that something happened in the interim between the two visits to Dr. Nix which aggravated plaintiff's physical condition, particularly on his left side. Dr. Tessitore's testimony also seems to corroborate plaintiff's statement about the accident having taken place on November 4, 1952. This physician, it must be remembered, also examined plaintiff on November 20, 1952, and he states that plaintiff told him that "about two weeks prior to my examination, he lifted a heavy push wagon load of mud with his partner, when he felt a sharp pain in the left side."
*477 Dr. Nix's diagnosis that plaintiff had hernias on both sides was completely confirmed by the operation on November 2, 1954. He inserted in plaintiff's groin a protective tantalum screen measuring approximately 6 inches by 12 inches extending entirely across the lower abdomen from one side to the other.
Plaintiff has had two single and two double hernia operations, or a total of six repairs. Dr. Tessitore has not had occasion to examine plaintiff since the last operation and, of course, he knows nothing of his present condition. Dr. Nix believes plaintiff can perform some very light work, but he points out there is grave danger of another recurrence in the event of any sort of physical activity. He was certain plaintiff cannot lift heavy cans; that in addition to his great weight, plaintiff has asthma which increases the hazards if additional surgery becomes necessary. Dr. Nix stressed that it would be unwise for plaintiff to attempt to lift any object weighing more than five pounds for the rest of his lifetime. He also mentioned that in all of his extensive practice he has never encountered another person who has had as many hernia repairs as plaintiff. He likened plaintiff's condition to "someone who has had a heart attack. They have to live within their capacity."
All the medical experts concur that there is a likelihood of recurrence of the hernias. Dr. Tessitore agrees that plaintiff's weight, plus the circumstance of his asthma, enhances the risk if another operation should be performed. He also stated that he would not recommend plaintiff's return to any duties entailing the lifting of garbage cans. Dr. Henry Leidenheimer, who also appeared for defendant, admitted that the greatest danger of recurrence lies in physical exertion; that where a patient such as plaintiff has had several recurrences it usually means that he has a weakness or tendency towards hernia. Dr. Leidenheimer said that he has known of a patient having one occurrence or perhaps two, but that the circumstance of three operations for hernia is indeed most unusual.
We can reach no other conclusion than that plaintiff is unable to return to the job of street sweeper which he was performing when he met with the accident, not only because his present condition would necessitate his working in pain, but also because if he should attempt to do the work there would be the possibility, if not the likelihood, that there would be a recurrence of the hernia which means that he would have to expose himself to physical dangers not common to other workmen in a like line of duty.
A street sweeper in defendant's Sanitation Department is called upon to push a large broom weighing approximately 2½ pounds, with the aid of which he sweeps rubbish, debris and litter into piles. It is necessary, from time to time, that he scrape and shovel mud from gutters. These duties require a substantial amount of muscular strength and physical exertion.
The fact that plaintiff was in an unfortunate and deficient physical condition when he entered the employment does not bar his right to the full benefits of the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., if in fact his condition has been aggravated by accident occurring within the course and scope of the employment to such an extent that he cannot return to his duties. The jurisprudence of this state is unanimous to that effect; when a workman sustains an accident which aggravates a pre-existing physical weakness, there is, under the workmen's compensation statute, a compensable injury. This rule has application in hernia cases. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625; Turner v. Southern Industries Company, La.App., 88 So.2d 238; Michel v. Maryland Casualty Company, La. App., 81 So.2d 36; Rivero v. Leaveau, La. App., 45 So.2d 418.
Plaintiff's wages after the accident cannot be considered as unearned or *478 as payments made in lieu of compensation in consideration for the performance of lighter duties by the workman. The amounts paid were not mere benevolences or gratuities and beyond question were on a quid pro quo basis. While plaintiff was ceverely handicapped, he was actually able to earn what was paid to him and not only did work for the City of New Orleans but was employed during the period in a gasoline filling station in the vicinity of his home. However, at this job he performed no manual labor, such as the lifting of tires and tools, etc., and his only duties were in servicing automobiles as they came into the station. We can only commend plaintiff for his exceptional fortitude.
Thus it was not the accident that disabled plaintiff but his disablement flowed from and is the direct result of the operation which was rendered necessary by the accident and which Dr. Nix performed on November 2, 1954, the expenses of which were paid for by the City of New Orleans. Therefore, we think that for the purposes of awarding a judgment of compensation plaintiff's injury must be determined as commencing on the date of his disability. The statute contemplates there may be cases where the "injury" does not develop immediately after the accident and in such circumstance the workman is to be allowed the compensation due him not from the date the accident happened but from the day he becomes disabled.
In Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, 525, an accident befell the workman in June 1952, but he managed to continue on with his job until October 1953; an operation was required which was performed in December 1953, but without success, and the workman was never able to return to his former duties. The suit for compensation was not brought until January 1954, and the question which concerned the Court was whether the demand was barred by the prescription of one year.
In the course of its opinion the Court said:
"* * * there is not the slightest doubt that, from a practical aspect, plaintiff's injury did not develop into total disability until October 26, 1953, when the pain in his back became so intense that he could no longer continue his employment. True enough, the law did not require plaintiff to work during those 70 tedious weeks following the accident enduring the pain that he must have continuously experienced and perhaps a man of less fortitude would have immediately stopped working and demanded compensation for total permanent disability. But for us to presently conclude that the injury developed on the day of the accident would be dealing in conjecture and the commencement of prescription cannot be decided on that basis. * * *
* * * *
"R.S. 23:1209 provides for two periods of limitation. Initially, it prescribes a period of one year from the date of the accident within which suit must be brought. This prescription is interrupted by the making of compensation payments and it does not begin to run again until after the last compensation payment is made. The other limitation, which was provided by the amendatory Act 29 of 1934, is also a prescription of one year, coupled with a peremption of two years. It declares `Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.'"
In Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218, 219, cited *479 in the Wallace case, a workman was injured in January 1946 and his injury diagnosed as neuritis, but he continued his work until March 11, 1947. It was held that prescription did not begin to run until the injury developed and that "the injury did not develop into total disability until March 11, 1947, at which time the plaintiff could no longer pursue his trade * *."
In the Wallace case the Court also cited Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 25. There a workman was injured in December 1951 but worked until June 1952 when, by virtue of his condition, he could no longer stay on the job. The contention was made by defendant that the injury and disability developed on the happening of the accident and prescription began to run against the compensation claim as of that date. In answering the contention the Court said:
"Even though plaintiff in the instant case consulted doctors, both company and private, he continued working until June 5, 1952. It was then that the injury developed to the point of total disability, and at that time prescription had not run on the filing of the suit."
By way of answer to the appeal plaintiff complains that defendant was allowed a greater credit than it was entitled to have and the credit be reduced to an amount representing 18 weeks' compensation at the rate of $27.625 per week.
It is conceded that after his operation of November 2, 1954, plaintiff was placed on "sick leave" for a period of 47 days and received "relief" at the rate of $195 per month for the period between November 2, 1954, to June 21, 1955.
The City of New Orleans is not entitled to a credit for the amount of the sick allowance plaintiff received as this cannot be considered the equivalent of workmen's compensation benefits. The City has in vogue a system whereby its employees accumulate, commensurate with the tenure of their employment over a period of time, an annual amount of "sick leave" and our thought is that when an incapacitated employee receives the benefits thereof he is only being paid that which he has already earned by virtue of past services rendered to the employer.
However, it does appear that after the 47 days for which plaintiff received the relief payments, he was paid workmen's compensation for a period of 18 weeks, and for this there should be credit given to the City against whatever compensation is due plaintiff.
Little need be said regarding the plea of prescription of one year filed by the defendant. The basis of the plea is that the accident happened on October 28, 1952, and suit was not filed within the year. Of course, there is no merit in the exception. We have found the plaintiff's accident happened on November 4, 1952, and his suit was filed within a year of that date.
In view of what has been said, it is necessary that the judgment appealed from be amended.
It is ordered, adjudged and decreed that the judgment appealed from be amended so as to provide that there is due plaintiff by defendant workmen's compensation at the rate of $27.625 per week beginning November 2, 1954, for a period not exceeding 400 weeks, with interest on all past due installments at the rate of 5 per cent per anuum from due date until paid, subject to a credit of $497.25, representing 18 weeks' compensation already paid plaintiff, and as thus amended and in all other respects the judgment is affirmed.
Amended and affirmed.

On Applications for Rehearing.
Both parties have made application for a rehearing. In the application filed by plaintiff our attention is called to the fact that the correct amount of compensation *480 which should have been awarded plaintiff is $28.49 per week. A reference to the record seems to bear out that this is the correct amount.
Therefore, our original decree is amended so as to provide that the compensation due plaintiff is to be at the rate of $28.49 per week and that the defendant is entitled to a credit for 18 weeks' compensation already paid plaintiff computed at the same rate.
Both applications are refused; however, the right is reserved unto defendant to apply for a rehearing on the question of the rate of compensation.
Original Decree Amended; both Applications for Rehearing refused.